# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-4340

OMNI TECH CORPORATION, TERRY ANDERSON,
AND NANCY ANDERSON,

*Plaintiffs-Appellees*,

*v.*

MPC SOLUTIONS SALES, LLC, AND
MPC COMPUTERS, LLC,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-144—**C.N. Clevert**, *Judge*.

ARGUED DECEMBER 7, 2005—DECIDED DECEMBER 30, 2005

Before EASTERBROOK, MANION, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Omni Tech sold its End User Division to MPC Solutions. The contract provided for some post-closing adjustments to the price, including one for net working capital, a term defined in §3.3(a)(v) of the contract. If net working capital exceeds $8 million, then the final purchase price rises by the amount of the difference; if net working capital is less than $8 million, then the price is reduced dollar for dollar. After the closing, Omni Tech told MPC that net working capital was $10.6

million; MPC replied that by its lights net working capital was only $6.7 million.

The parties had contemplated the possibility of such a disagreement and provided how it should be resolved: they "shall refer their remaining differences to [an accounting firm that] shall, acting as experts and not as arbitrators, determine solely on the basis of the standards set forth in this Section 3.3 . . . whether and to what extent, if any, the Final Net Working Capital requires adjustment in order to be prepared in accordance with this Section 3.3. . . . The determination of the Independent Accountant shall be final, conclusive and binding upon [Omni Tech] and [MPC Solutions]." The parties agreed that PricewaterhouseCoopers would serve as the independent accountant, but instead of submitting the issues for its resolution Omni Tech filed this suit under the diversity jurisdiction demanding that a judge determine the Division's net working capital on the closing date. MPC asked the court to stay or dismiss the suit so that the accountant could make the "final, conclusive and binding decision" for which the contract called, but the judge refused. He wrote that, because the accountants act "as experts and not as arbitrators," this is not an arbitration clause.

The district court assumed that it may ignore any form of alternative dispute resolution other than "arbitration." Why would that be so? Many contracts have venue or forum-selection clauses. These do not call for "arbitration" but are routinely enforced, even when they send the dispute for resolution outside the court's jurisdiction. See, e.g., *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *Publicis Communication v. True North Communications Inc.*, 132 F.3d 363 (7th Cir. 1997); *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir. 1994).

Arbitration enjoys special protection under federal law; states may not adopt anti-arbitration rules for contracts in

or affecting interstate commerce but must enforce these agreements except "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. See also *Perry v. Thomas*, 482 U.S. 483, 489-90 (1987). Arbitrators may compel witnesses to attend, see 9 U.S.C. §7; *Stolt-Nielsen SA v. Celanese AG*, 2005 U.S. App. LEXIS 25053 (2d Cir. Nov. 21, 2005), and may have other powers (or duties) that non-arbitrators lack. When one of these powers or duties is important, the choice between "arbitration" and other forms of private dispute resolution matters. But here none of the federal rules for conducting arbitration supplies appears to be at issue.

Several Wisconsin decisions enforce clauses that look very much like this one (and for good measure call the procedure "arbitration"). See, e.g., *Lower Baraboo River Drainage Dis. v. Schirmer*, 199 Wis. 230, 233-35, 225 N.W. 331, 333 (1929) (construction contract provision stating that engineer's determination of disputes as to suitability of work will be "final and conclusive" is an enforceable agreement to arbitrate); *Depies-Heus Oil Co. v. Sielaff*, 246 Wis. 36, 41-44, 16 N.W. 2d 386, 388-90 (1944) (agreement for appraiser to set value for exercise of option to purchase property is enforceable as an agreement to arbitrate). Names are unimportant, however; what matters is that Wisconsin respects the parties' ability to make agreements of this kind.

The statement that PricewaterhouseCoopers will act as an expert and not as an arbitrator means that it will resolve the dispute as accountants do—by examining the corporate books and applying normal accounting principles plus any special definitions the parties have adopted— rather than by entertaining arguments from lawyers and listening to testimony. It does not imply that the whole section of the contract committing resolution to an independent private party is hortatory. Thus the provision for the "final, conclusive and binding" resolution of this dispute by someone

other than a federal judge must be honored; the judge is no more entitled to ignore it than he could ignore the contract's detailed definition of "net working capital."

We have not overlooked the possibility that appellate jurisdiction—even if not the district judge's duty—turns on whether this clause provides for "arbitration." Because the case is ongoing in the district court, our jurisdiction comes not from 28 U.S.C. §1291 but from 9 U.S.C. §16(a)(1)(A), which authorizes an appeal whenever a district judge refuses a motion for stay under §3 of the Federal Arbitration Act, 9 U.S.C. §3. Section 3 in turn says that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." A motion under §3 depends on a *contention* that the contract provides for "arbitration," and MPC Solutions made just that argument in the district court. Its motion cannot be called frivolous, as cases such as *Lower Baraboo River* (and others cited below) demonstrate.

Appellate jurisdiction under §16(a)(1)(A) depends on the existence (and denial) of a motion for stay pending arbitration, not on the movant being correct. If a §3 motion is made and denied, then appellate jurisdiction exists to determine whether the denial was proper. And once an interlocutory order is before the court for review, we may resolve the appeal on any proper legal ground—for it is the order, and not the district judge's opinion, that is on appeal. See *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 204-05 (1996). So we have jurisdiction, and we exercise that jurisdiction to hold that the suit should have been stayed whether or not the contract provides for "arbitration" as

opposed to some other form of alternative dispute resolution.

It is accordingly unnecessary to decide whether state or federal law governs the characterization of a dispute-resolution process as one for "arbitration," and, if the question is federal, whether every provision for a "final and binding" decision should be called an agreement to arbitrate. Compare *Progressive Casualty Insurance Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir. 1993) (state law supplies definition), with *Salt Lake Tribune Publishing Co. v. Management Planning, Inc.*, 390 F.3d 684, 688-89 (10th Cir. 2004) (definition of "arbitration" comes from federal law and includes every agreement under which a private party renders a binding disposition). See also *McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830-31 (2d Cir. 1988) (appointment of independent tax counsel is agreement to "arbitrate" because the counsel's decision binds the parties); *Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089, 1092 (3d Cir. 1987) (appointment of a third person to make a decision that will be binding on the parties is "arbitration" regardless of contract's nomenclature). Cf. *Butler Products Co. v. Unistrut Corp.*, 367 F.2d 733, 735 (7th Cir. 1966) (use of an accounting firm to make a determination "binding on the parties" is arbitration whether Illinois or federal law supplies the definition). Because this agreement is valid under Wisconsin law, whether or not it carries the label "arbitration," it must be implemented in full.

Full implementation means that the district judge must stay the litigation and permit PricewaterhouseCoopers to make a decision. Omni Tech contends that a judge is as capable as an accountant of interpreting the terms in the parties' detailed definition of "net working capital." That may or may not be true, but Omni Tech agreed with MPC that an accountant would make the decision, so arguments about judicial knowledge and aptitude are beside the point.

The parties are enmeshed in an accounting dispute; they have appointed an accountant to resolve it. The accountant may reach its own conclusion independent of the parties' calculations: Omni Tech's proposal to confine the accountant to selecting one of the parties' numbers is untenable. The parties agreed that the independent accountant would reach a decision *as an expert does*, not as the umpire in a final-offer arbitration does.

Because the suit will be stayed rather than dismissed, Omni Tech will have an opportunity later to ask the court to decide whether PricewaterhouseCoopers has stayed within its contractually prescribed role. Such a post-decision dispute could in principle bring to the fore the question whether one of the grounds in 9 U.S.C. §10(a) permits a court to upset the award, which is possible only if "arbitration" has occurred. But if Wisconsin law provides for equivalent review of decisions by other private decision-makers, or if none of the grounds in §10(a) is asserted to be present, again there will be no need to decide whether this contract calls for "arbitration."

The district court's decision is vacated, and the case is remanded with instructions to stay the litigation while the independent accountant resolves the dispute about net working capital at closing.

A true Copy:

　　　Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—12-30-05