*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0179p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

EVANSTON INSURANCE COMPANY,
     *Plaintiff-Appellee,*

  *v.*

COGSWELL PROPERTIES, LLC,
     *Defendant-Appellant.*

Nos. 10-2075/11-1068

Appeals from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cv-996—Gordon J. Quist, District Judge.

Argued: April 20, 2012

Decided and Filed: May 29, 2012[*]

Before:  SUHRHEINRICH, MOORE, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Steven G. Silverman, MELAMED, DAILY, LEVITT & MILANOWSKI, Huntington Woods, Michigan, for Appellant.  Thomas B. Orlando, FORAN, GLENNON, PALANDECH, PONZI & RUDLOFF, Chicago, Illinois, for Appellee. **ON BRIEF:** Steven G. Silverman, Joseph L. Milanowski, MELAMED, DAILY, LEVITT & MILANOWSKI, Huntington Woods, Michigan, for Appellant. Thomas B. Orlando, Thomas B. Orlando, FORAN, GLENNON, PALANDECH, PONZI & RUDLOFF, Chicago, Illinois, for Appellee.

---
[*] This decision was originally issued as an "unpublished decision" filed on May 29, 2012.  On June 12, 2012 the court designated the opinion as one recommended for full-text publication.

--------------------

**OPINION**

--------------------

SUHRHEINRICH, Circuit Judge.   This case involves a dispute regarding fire loss on commercial property owned by Defendant-Appellant Cogswell Properties, L.L.C. ("Cogswell Properties").  Cogswell Properties appeals (1) the order of the district court vacating an appraisal award reached by an umpire pursuant to the Michigan appraisal statute, Mich. Comp. Laws § 500.2833(1)(m), on an insurance policy issued by Plaintiff-Appellee, Evanston Insurance Company ("Evanston Insurance") (Appeal No. 10-2075); and (2) the order of the district court granting Evanston Insurance's motion for entry of judgment on the second appraisal (Appeal No. 11-1068).  We **AFFIRM**.

## I.  Background

### A.  Facts

In September 2006, Cogswell Properties purchased the vacant "Rock Tenn Paper Mill" site in Otsego, Michigan, in a tax foreclosure sale for $70,000 (the "Building" or "Property").  The Building consists of over twenty interconnected or adjacent buildings and covers approximately 440,700 square feet.

Evanston Insurance issued a first-party property insurance policy to Cogswell Properties effective November 16, 2006 to May 6, 2007, insuring Cogswell Properties against certain Building loss and damage (the "Policy").  The Policy had a Building coverage limit of $1,000,000, subject to coinsurance at 80%.

The Policy contains the following pertinent provisions:

BUILDING AND PERSON PROPERTY COVERAGE FORM

. . . .

E. LOSS CONDITIONS

. . . .

2.    Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser[].    The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.    The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding. Each party will:

a.    Pay its chosen appraiser; and
b.    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.[1]

. . . .

4. Loss Payment

a.    In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) *Pay the value of lost or damaged property*;
. . . .

d.    We will not pay you more than your financial interest in the Covered Property.
. . . .

g.    We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

---

[1]Michigan law requires fire insurance policies to contain an appraisal provision. *See* Mich. Comp. Laws § 500.2833(1)(a) & (m).  The Policy's appraisal provision mirrors the statute, with the exception that it also contains a clause stating that "[a] decision agreed to by any two will be binding." But it also states: "If there is an appraisal, we [Evanston Insurance] will still retain our right to deny the claim."

(1) We have reached agreement with you on the amount of loss; or

(2) An appraisal award has been made.
. . . .

7. Valuation

We will determine the *value* of the Covered Property in the event of loss or damage as follows:

a.      *At actual cash value as of the time of loss or damage*, except as provided in b.,c.,d.,e. and f. below.

. . . .

F. ADDITIONAL CONDITIONS

. . . .

1.      Coinsurance

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of the Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.[2]

. . . .

G. OPTIONAL COVERAGES

If shown in the Declarations, the following Optional Coverages apply separately to each item.

. . . .

---

[2]This section then sets out the steps by which it will determine "the most that we will pay."

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;
(2) Divide the Limit of Insurance of the property by the figure determined in step (1);
(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in step (2); and
(4) Subtract the deductible from the figure determined in step (3).

We will pay the amount determined in step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

3. Replacement Cost

> a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this coverage form.

(Emphases added.)

On November 16, 2006 (the very first day of coverage), a section of the Building–roughly 15,700 square feet of the total square footage of 440,700 (or less than 4% of the Building)–was damaged by fire (the "Loss"). Cogswell Properties submitted a claim to Evanston Insurance for property losses suffered in the fire. Evanston Insurance determined that the actual cash value of the Building at the time of the loss was $10,223,384.80. Under the coinsurance provision of the Policy, Cogswell was required to carry insurance on the Building of no less than $8,178,707.84 (80% of $10,223,384.80). Because Cogswell Properties carried only $1 million in insurance on the Building, Evanston Insurance determined that it was liable for only 12.23% of the loss ($1 million divided by $8,178,707.84), making Cogswell Properties a coinsurer for 87.7 % of the loss. Evanston Insurance calculated the actual cash value of the loss at $342,836.46. Evanston Insurance therefore determined that it was liable to Cogswell for only $36,918.27 ($342,836.46 times 12.23% less the $5,000 deductible). Evanston Insurance paid this amount to Cogswell Properties.

**B. Procedural History**

Cogswell Properties did not agree with Evanston Insurance's assessment, and Evanston Insurance filed a petition in Michigan state court to appoint an umpire pursuant to Mich. Comp. Laws § 500.2833 because the parties were initially unable to agree on the selection of an umpire. The parties ultimately agreed on an umpire, mooting Evanston Insurance's initial action for the appointment of one.

While that action was still pending, Cogswell Properties filed a counterclaim in the state court action, alleging that Evanston Insurance calculated and agreed that the value of the Building was $1 million when it issued the Policy. This would have resulted in no coinsurance penalty. Alternatively, Cogswell Properties argued that the

determination of the Building's value for coinsurance purposes was a matter for the trier of fact, not the appraisal panel.  Evanston Insurance removed the entire action to federal district court on the basis of diversity jurisdiction.  That same day, the parties agreed to appoint William W. Jack, Esq. as the umpire.

On January 23, 2009, the district court ruled that simply because Evanston Insurance insured the Building for $1 million, Evanston Insurance had not affirmed that the Property was actually worth that amount.  The district court also held that the respective appraisers and the umpire should determine the value of the Building for purposes of applying the coinsurance provision, and gave the following instructions.

> As the Policy does not define actual cash value, all evidence relevant to an accurate determination of the Property's value must be considered.  While replacement cost minus depreciation is one relevant means of determining the Property's value, it is not necessarily the sole or preferred means.  Replacement cost minus depreciation is one of several methods pertinent to an accurate valuation that may be utilized by the umpire and appraisers.

In explaining how to make this determination, the district court instructed the appraisal panel that:

> Michigan courts recognize that no "set method [of valuation] is necessary within the appraisal context." *Davis [v. Nat'l Am. Ins. Co]*, 259 N.W.2d [433] at 438.  Instead, they use the "broad evidence rule," which permits an appraiser to consider "any evidence logically tending to the formation of a correct estimate of the value of the destroyed or damaged property." *Id.*  Market value, replacement value, and other means of valuation are merely guides, "rather than shackles compelling strict adherence." *Id.*
>
> Where, as in the instant case, replacement value minus depreciation and market value yield vastly disparate valuations, a single method of valuation is less likely to establish a property's value accurately.  This is particularly true of relatively illiquid property such as real estate.  In the absence of a contractual definition of "actual cash value," Michigan law favors the consideration of all evidence relevant to an accurate determination of the Property's value. *Id.*  The appraisers and umpire must consider all relevant evidence as they determine the Property's actual cash value.

Cogswell Properties selected Ethan Gross as its appraiser. Gross used a fair market value approach to value the Property, and used a replacement cost less depreciation approach to value the Loss. Gross valued the Building at $960,000, and the Loss at $958,560.

Evanston Insurance selected Dan Dowell as its appraiser. Dowell thought it illogical to use different valuation methods to determine the value of the Building and the Loss. He therefore proposed three different approaches, using the same method for determining each value. Under the "Replacement Cost Less Depreciation" method, Dowell calculated the actual cash value of the Loss at $704,462.34, and the actual cash value of the Property at $9,313,997.88. Under the "Market Value" approach, Dowell calculated the actual cash value of the Loss at $100,000.00, and the actual cash value of the Building at $1,540,000.00. Under the "Market Value Based on Actual Purchase Price" approach, the actual cash value of the Loss was $4,543.00, and the actual cash value of the Building at $70,000.00.

The umpire elected to use two different definitions of actual cash value–market value for the Building, and replacement cost less depreciation to assess the Loss. Thus, the umpire determined that the actual cash value of the property was $1,540,000.00 (using one of Dowell's market values), and the damage to the property was $736,384.89 (using Gross's replacement cost of $1,534,135.28). Gross agreed with the appraisal. The umpire's appraisal award was formalized in writing on September 29, 2009. *See* Mich. Comp. Laws § 500.2833(1)(m) (stating that an appraiser and an umpire must "set the amount of loss" by written agreement). The decided figures, which appear on the face of the award, are as follows:

**Building–Actual Cash Value of Property**     **$1,540,000.00**

**Building–Actual Cash Value of Loss & Damage**  **$736,384.89**

On October 1, 2009, Cogswell Properties demanded payment in the amount of $554,553.49, representing the net amount under the appraisal award after application of the coinsurance provision of the Policy and the deductible.

Evanston Insurance filed the present action in federal district court on October 29, 2009, asking the district court to vacate the appraisal award to Cogswell Properties on the grounds of manifest mistake and bad faith in the award. The parties filed cross-motions for summary judgment. On July 30, 2010, the district court vacated the appraisal award and remanded the matter to the umpire for determination of a new award.

The district court ruled that the appraisal award demonstrated both a manifest mistake and an error of law. It held that by using different valuation methods for the actual cash value of the Property as a whole and the actual cash value of the loss, "the umpire improperly ascribed different meanings to the [actual cash value] for each of those determinations when the Policy calls for one consistent definition of value." It reasoned that

> [t]he particular facts and circumstances regarding the use and condition of the Property are the same regardless of whether the whole or only the loss portion is considered, and under the broad evidence rule the values of both should be determined on the same consistent basis to achieve an accurate valuation. Because there is no support in the Policy for using two different definitions, this was an error of law that substantially affected the award.[3]

The court added that the error

> produced a result that is both illogical and contrary to the purposes of the broad evidence rule. As discussed above, the purpose of the rule is to allow appraisers to select an appropriate valuation method, recognizing that a one-size-fits-all approach of a single method may not permit an award that reflects the true circumstances of the loss. Requiring a consistent definition of value merely ensures that the value of the loss bears some logical relationship to the value of the entire Property. Here, the umpire's use of two valuation methods yielding "vastly different valuations" produced an award substantially at odds with the

---

[3]In support, the court noted that "under the Policy's Loss Conditions section, in the event of a loss, Evanston Insurance is obligated to '[p]ay the *value* of lost or damaged property,' which it will determine '[a]t *actual cash value* as of the time of loss or damage.'" (quoting the Policy ¶¶ E4.a.(1), E.7.a.). The court further noted that the appraisal provision "provides that the appraisers must state the 'value of the property' while the coinsurance provision refers to 'the value of Covered property at the time of loss.'"

circumstances of the loss:  although less than four percent of the Property was damaged, the value of the damaged portion was almost half (47.8%) of the value of the entire Property.

In addition, the court found that this manifest mistake appeared on the face of the award because of the magnitude of the disparity, which was so substantial as to suggest an error of law.

Next, the district court held that, contrary to Evanston Insurance's assertion, its liability was not limited to the amount Cogswell Properties paid for the Property ($70,000), but the fair market value ($1.5 million).  Finally, the court denied Cogswell Properties's motion for penalty interest as premature.

On August 6, 2010, Cogswell Properties filed a motion for reconsideration, claiming that the district court failed to consider that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*., rather than Michigan law, provided the basis for a district court's review of an appraisal award like the one before it.  On August 10, 2010, the district court denied the motion, as well as a related request for certification for interlocutory appeal.  The court found that Cogswell Properties never raised the issue:

> Cogswell fails to acknowledge, however, that it, too, argued that Michigan law governed the scope of review.  For example, in its brief in support of its motion for summary judgment, Cogswell argued that "Michigan law makes clear that an award should be affirmed, unless there is a legal error appearing on the face of the award," (Def.'s Br. Supp. Mot. Summ. J. at 12 (internal quotations and footnote omitted)), and that "[t]he Michigan Court of Appeals has warned that judicial review should not be an appellate parachute in the event of an adverse arbitration decision.  (*Id.* at 13 (internal quotations and footnote omitted).).  Cogswell also cited *Hartford Insurance Company v. Miller*, No. 04-10314, 05-10092, 2006 WL 2844124 (E.D. Mich. Sept. 30, 2006), a decision from the Eastern District of Michigan which applied the standard of review under Michigan law for review of an appraisal award without ever mentioning the FAA.  Moreover, in response to the Court's request for additional briefing at oral argument on the issue of whether, under Michigan law, an error of law by the appraisal panel constitutes manifest mistake, Cogswell did not respond that  the FAA provides the proper scope of review, but instead argued that *Detroit Auto. Inter-Insurance Exchange v. Gavin*, 416 Mich. 407, 331 N.W.2d 418

(1982), "actually supports the enforcement of the Appraisal Award . . . [because] a court may only properly review an arbitration award for an error of law where the error clearly appears on the face of the award." (Def's Supplemental Br. at 2 (internal quotations, emphasis, and footnote omitted).)

The court held that because it had already ruled on the issue "after a full and substantial round of briefing," "consideration of Cogswell's belated argument would prejudice Evanston, which never had the opportunity to respond." Cogswell Properties filed a notice of appeal on August 20, 2010, from the district court's July 30, 2010 order vacating the appraisal award.

On September 28, 2010, the umpire issued a new valuation per the court order. He found that the actual cash value of the Property was $9,313,997.88, and that the actual cash value of the Loss was $958,560.44. The umpire commented that he still thought the original valuation was correct, but he felt constrained to follow the district court's opinion.

On October 5, 2010, Evanston Insurance's appraiser executed the umpire's evaluation. As stated in the new award, the actual cash value of the Property, for coinsurance purposes, was $9,313,997.88. Under the coinsurance provision, Cogswell Properties was therefore required to carry insurance on the Property for at least $7,451,198.30 (80% of $9,313,997.88). Because Cogswell Properties carried only $1 million in insurance on the Property, Evanston Insurance was liable for only 13.42% of the loss ($1 million divided by $7,451,198.30). Under the new award, the actual cash value of the loss and damage to the Building was $958,560.44. This made Evanston Insurance liable to Cogswell for $128,645.14 for the loss ($958,560.44 times 13.42%). After adjusting for the deductible ($5,000) and Cogswell Properties's prior payment ($36,918.27), Evanston Insurance was liable for an additional $86,726.87 ($128,645.14 less $36,918.27 and $5,000). On December 17, 2010, the district court entered judgment in the amount of $86,726,87.

On January 14, 2011, Cogswell Properties filed a notice of appeal from the district court's December 17, 2010 judgment on the new appraisal award. The two appeals were consolidated by this court on February 8, 2011.

## II. Analysis[4]

### A. Applicability of the FAA

Cogswell Properties contends that the district court committed reversible error by failing to apply the FAA to this case because state law applies and Michigan law considers appraisals to be a form of common law arbitration.[5]  Cogswell Properties continues that the "inverse preemption" of the McCarran-Ferguson Act does not apply in this case because the FAA does not invalidate, impair, or supersede the Michigan appraisal statute and the Michigan laws and court rules governing arbitration were not enacted for the purpose of regulating insurance.

Evanston Insurance responds that Cogswell Properties forfeited any argument that the FAA applies. Evanston Insurance maintains that the district court applied the correct standard of judicial review under Michigan law and correctly held that the award reflected a manifest mistake.

### 1. Forfeiture of the FAA Claim

First we consider whether Cogswell Properties forfeited the argument that the FAA applies rather than state law. The district court refused to apply the FAA because Cogswell Properties did not claim that the FAA governed until it filed its motion for reconsideration.

---

[4]In its Jurisdictional Statement section, Cogswell Properties states that this court has jurisdiction over Appeal No. 10-2075, because section 16(a)(1)(E) of the FAA provides for a right to appeal to a court with competent jurisdiction from an order vacating an arbitration award. Evanston Insurance disputes this on the ground that the FAA does not apply and thus affords no basis for jurisdiction. In any event, this issue was rendered moot by the notice of appeal Cogswell Properties filed on January 14, 2011, upon the district court's entry of final judgment on December 17, 2010, from which Cogswell Properties timely appealed (Appeal No. 11-1068).

[5]Neither party disputes that the appraisal clause is contained in a policy of insurance that involves interstate commerce.

We review the district court's denial of a motion for reconsideration for abuse of discretion. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009). Local Rule 7.4(a) for the United States District Court for the Western District of Michigan provides that in moving for reconsideration, the movant must "not only demonstrate a palpable defect by which the Court and the parties have been misled, but [must] also show a different disposition of the case must result from a correction thereof." "[A] motion for reconsideration may not be used to raise issues that could have been raised in the previous motion. . . ." *Aero-Motive Co. Great Am. Ins.*, 302 F. Supp.2d 738, 740 (W.D. Mich. 2003).

The district court did not abuse its discretion. As the district court detailed in its order denying reconsideration, Cogswell Properties had several opportunities to invoke the FAA, including in the declaratory judgment action it filed, or in connection with Evanston Insurance's action to vacate the appraisal award, as part of its summary judgment motion. Yet it consistently maintained that state law applied, and did not introduce the concept until after the district court had granted summary judgment to Evanston Insurance. Furthermore, as the district court noted, entertaining the new argument after "a full and substantial round of briefing" would prejudice Evanston Insurance, which would be required to respond to an entirely new and complex legal theory under the FAA.

Arguments raised for the first time in a motion for reconsideration are untimely and forfeited on appeal. *See Morgan v. FBI*, 509 F.3d 273, 277 (6th Cir. 2007) (and cases cited therein); *Am. Meat Inst.v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984). *See also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553-54 (6th Cir. 2008) (holding that the defendant failed to preserve for appeal issue of whether the district court had abused its discretion by exercising jurisdiction in a declaratory judgment action since it was not raised until the reply to the opposing party's response to party's motion to amend the original declaratory judgment action). Although this rule is prudential, not jurisdictional, *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003); *Coffee Beanery, Ltd. v. WW, L.L.C.*,

300 F. App'x 415, 419 (6th Cir. 2008) (citing *Coopers & Lybrand*), we find no reason to deviate from this principle in this case.  *See Scottsdale,* 513 F.3d at 552 (noting that this court has, "on occasion, deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce a plain miscarriage of justice'") (quoting *Foster v. Barilous*, 6 F.3d 405, 407 (6th Cir. 1993)).[6]

As a result, we need not consider it here.  Notwithstanding, for the reasons provided next, we conclude that the argument would fail anyway.

## B.  Application of the FAA

The FAA provides in relevant part that: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The question then is whether the appraisal remedy in this case was an arbitration under the FAA.  *See Fit Tech, Inc., v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6-7 (1st Cir. 2004) (addressing whether an accounting remedy under a purchase agreement constituted "arbitration" under FAA).  The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Hosp. v. Mercury Contstr. Corp.*, 460 U.S. 1, 24 (1983).  Issues of arbitrability are questions of federal substantive law.  *Southland Corp. v. Keating*, 465 U.S. 1, 12 (1984).  But the FAA does not define "arbitration," *Fit Tech*, 374 F.3d at 6, so we must also decide which source of law provides that definition.  The circuits are split on this question.  *Compare Hartford Lloyd's Ins. Co. v. Teachworth*, 898 F.2d 1058, 1061-63 (5th Cir. 1990) (state law); *Wasyl, Inc., v. First Boston Corp.*, 813 F.2d 1579,1582 (9th Cir. 1987) (state law), *with Salt Lake Tribune Publ. Co. v. Mgmt. Planning, Inc.* 390 F.3d 684, 689 (10th Cir. 2004) (federal law); *Fit Tech*, 374 F.3d at 6-7 (federal law).  *See also Portland Gen. Elec. Co. v. U.S. Bank Trust*

---

[6]Cogswell Properties' reliance on *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276 (5th Cir. 1994), is misplaced.  That case is limited to the proposition that the parties cannot use a choice-of-law provision to divest federal courts of jurisdiction.  *See Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 248 n.6 (5th Cir. 1998).

*Nat. Ass'n as Tr. For Trust No. 1*, 218 F.3d 1085, 1091 (9th Cir. 2000) (Tashima, J., concurring) (federal law should apply); *id.* at 1091-92 (McKeown, J., specially concurring) (same).  We agree with the First and Tenth Circuits that federal law should control the definition, basically because "[i]t seems counter-intuitive to look to state law to define a term in a federal statute on a subject as to which Congress has declared the need for national uniformity." *Portland Gen. Elect.*, 218 F.3d at 1091 (Tashima & Lay, JJ., concurring); *id.* at 1091-92 (McKeown, J., specially concurring).  However, for reasons to be discussed below, the result would be the same in this case under either federal or state law.

### 1.  Federal Law

Under federal law, whether the appraisal provision in this case is "arbitration" under the FAA depends upon how closely it resembles classic arbitration.  *Salt Lake Tribune*, 390 F.3d at 689; *Fit Tech*, 374 F.3d at 7.  "Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute." *Salt Lake Tribune*, 390 F.3d at 689.  *See also Fit Tech*, 374 F.3d at 7 (holding that "common incidents" of classic arbitration include a final, binding remedy by a third party, "an independent adjudicator, substantive standards, . . . and an opportunity for each side to present its case"); *Harrison v. Nissan Motor Corp.*, 111 F.3d 343, 350 (3d Cir. 1997) (stating that "the essence of arbitration, we think, is that, when the parties agree to submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator").  Black's Law Dictionary defines arbitration as "a method of dispute resolution involving one or more neutral third parties who are usu. agreed to by the disputing parties and whose decision is binding. — Also termed (redundantly) binding arbitration."  Black's Law Dictionary (9th ed. 2009) (emphasis omitted).

Under this definition, the appraisal provision does not constitute arbitration for purposes of the FAA.  Here the parties agreed in the Policy to submit the determination of the amount of loss and the value of the Building to appraisal.  Although the appraisal provision states that "A decision agreed to by any two [umpire and appraisers] will be

binding," it also states that "[i]f there is an appraisal, we [Evanston Insurance] will still retain our right to deny the claim." The Policy, like the statute "does not suggest that a hearing-type appraisal process is required." *Hartford Ins. Co. v. Miller*, Nos. 04-10314, 05-10092, 2006 WL 2844124, at \*15 (E.D. Mich. Sept. 30, 2006) (discussing Mich. Comp. Laws § 500.2833(1)(m) and holding that although the umpire could have held a hearing, he was not required to). The Policy does not provide for a final and binding remedy by a neutral third party.[7]

## 2. State Law

The Michigan Supreme Court has held that an appraisal clause "constitutes a common-law arbitration agreement." *Davis v. Nat'l Am. Ins. Co.*, 259 N.W.2d 433, 437 (Mich. App. 1977) (citing *Manausa v. St. Paul Fire and Marine Ins. Co.*, 97 N.W.2d 708 (1959)). Because Michigan considers appraisals to be the equivalent of common-law arbitration, Cogswell Properties maintains that the appraisal here is in essence an arbitration provision and therefore governed by FAA standards. This is not a correct characterization of Michigan law. Although the state case law likens appraisals to common-law arbitration, it does so for the limited purposes of determining the appropriate standard of judicial review of appraisal awards.

The Michigan Insurance Code mandates the inclusion of an appraisal provision in fire insurance policies, Mich. Comp. Laws § 500.2806; § 500.2833(1)(a), and one will be judicially applied to an insurance contract even where omitted by the parties. *Davis*, 259 N.W.2d at 436. The Michigan Court of Appeals has characterized this requirement as a "substitute for judicial determination of a dispute concerning the amount of loss," which is "a simple and inexpensive method for the prompt adjustment and settlement of claims." *Id.* at 437 (internal quotation marks and citation omitted).

The Michigan Legislature has also created a general statutory scheme governing contractual arbitration provisions that is entirely separate and distinct from the Insurance

---

[7]Because the FAA claim has been forfeited, we need not address Evanston Insurance's argument that the McCarran-Ferguson Act inversely preempts the FAA's application in this case.

Code.  *See* Mich. Comp. Laws § § 600.5001 *et seq.*  The Michigan Arbitration Act (MAA), requires in key part that the agreement to arbitrate be in writing and must provide that "a judgment of any circuit court may be rendered upon the award made pursuant to such agreement."  Mich. Comp. Laws § 600.5001(2). To qualify as a statutory arbitration agreement, the contract must meet the requirements set forth in the statute.  *Wold Architects & Eng'rs v. Strat*, 713 N.W.2d 750, 754 (Mich. 2006).

If the parties' contract does not comply with the requirements of the MAA, "the parties are said to have agreed to a common-law arbitration." *Id.* at 755.  Common-law arbitration is characterized by its unilateral revocation rule, which "allows one party to terminate arbitration at any time before the arbitrator renders an award." *Id.*  In *Wold*, the Michigan Supreme Court reaffirmed that "Michigan has long recognized that a distinction exists between statutory and common-law arbitration," *id.* at 754, and held that common-law arbitration coexists with, and is not preempted by, the MAA.  *Id.* at 756-59. *See generally Jacobs v. Schmidt*, 203 N.W. 845, 846 (Mich. App. 1925) (citing *Noble v. Grandin*, 125 Mich. 383, 84 N. W. 465 (1900)) (discussing differences between arbitration as "a substitution, by consent of parties, of another tribunal for the tribunals provided by the ordinary processes of law," and  appraisal as "[a] valuation of, or an estimation of the value of, property").

The Michigan courts in turn have treated appraisals differently than common-law arbitration.  In *Frans v. Harleysville Lake States Ins. Co.*, 714 N.W.2d 671 (Mich. App. 2006), the court considered whether an appraisal provision in a fire insurance policy was subject to unilateral revocation like other common-law arbitration clauses.  *Id.* at 672. There, a fire damaged the insured's business property.  *Id.*  The parties were unable to agree on the amount of the loss, so the insurance company made a written demand for appraisal pursuant to the appraisal provision in the policy.  *Id.*  The insured refused to participate in the appraisal, arguing that the policy was a common-law arbitration clause subject to unilateral revocation.  *Id.* The trial court agreed.  *Id.*  Upon reconsideration, the Michigan Court of Appeals held that because the appraisal provision in the policy was mandated by Mich. Comp. Laws § 500.2833(1)(m), and the statute "dictates that the

appraisal process shall proceed on the demand of *one* party," the statute overrode the common-law principle of unilateral revocation. *Id. See also Yaldo v. Allstate Prop. & Cas. Ins. Co.*, 641 F. Supp.2d 644, 652 (E.D. Mich. 2009) ("The *Frans* decision, that parties cannot unilaterally withdraw from appraisal, also makes sense given the Michigan statutory requirement that such appraisal provisions be included in all fire insurance policies, because requiring parties to submit to appraisal would be hollow if either party were able to unilaterally withdraw from appraisal.").

An appraisal is equated with common-arbitration (but not statutory arbitration), for purposes of judicial review. As the Michigan Court of Appeals explained:

> This Court has referred to the appraisal process mandated by statute and contained in defendant's homeowner's policy as a "substitute for judicial determination of a dispute concerning the amount of a loss," which is "a simple and inexpensive method for the prompt adjustment and settlement of claims." *Thermo-Plastics R & D, Inc. v. General Accident Fire & Life Assurance Corp., Ltd.*, 42 Mich.App. 418, 422, 202 N.W.2d 703 (1972). This appraisal process has been held to be the product of a common-law arbitration agreement rather than statutorily mandated arbitration, and thus is not subject to as strict a standard of review as statutorily mandated arbitration. *Davis v. National American Ins. Co.*, 78 Mich.App. 225, 232, 259 N.W.2d 433 (1977). Judicial review of the award is limited to instances of bad faith, fraud, misconduct, or manifest mistake. *Port Huron & N.R. Co. v. Callanan*, 61 Mich. 22, 26, 34 N.W. 678 (1887); *Davis, supra*, 78 Mich.App. at 232, 259 N.W.2d 433.

*Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich. App. 1991) (footnote omitted). *See also Frans*, 714 N.W.2d at 673 (noting that the Michigan cases discussing appraisals and common-law arbitration do so "mainly in the context of an analysis relative to the appropriate standard of review applicable to common-law arbitration as opposed to statutory arbitration").

This reading of Michigan law is consistent with the holdings of numerous other courts that have held that an appraisal provision in a property insurance policy is not controlled by the FAA because appraisal differs significantly from arbitration. *See, e.g., Dywer v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 286-87 (5th Cir. 2009)

(holding that an appraisal under a standard flood insurance policy was not an arbitration subject to the FAA); *Prien Props., LLC v. Allstate Ins. Co.*, No. 07-CV-845, 2008 WL 1733591, at *2 (W.D. La. Apr. 14, 2008) (holding that the appraisal process in a commercial property policy was not governed under the FAA or the Louisiana Arbitration Law "because appraisal is separate and distinct from arbitration"); *Rastelli Bros., Inc. v. Netherlands Ins. Co.*, 68 F. Supp. 2d 451, 453-54 (D. N.J. 1999) (holding that an appraisal clause was not enforceable under the FAA, because such an appraisal process is not regarded as an "arbitration" under New Jersey law; denying the plaintiff's motion to amend its complaint under Fed. R. Civ. P. 60(b)); *Teachworth*, 898 F.2d at 1062 (holding that appraisal was not arbitration governed by the FAA because under Texas law an insurance appraisal only determines the value of the loss).

In short, even if the FAA claim had been properly raised and preserved, and even if state law applied to determine the definition of "arbitration" under the FAA, the appraisal provision at issue is not akin to an arbitration clause. The FAA does not govern the parties' dispute.[8]

We now turn to the issue which is properly before us.

## C. Judicial Review of the Appraisal

Because the appraisal provision at issue is just that, we have come full circle back to the standard used by the district court. That is, "[j]udicial review of the award is limited to instances of bad faith, fraud, misconduct, or manifest mistake." *Kwaiser*, 476 N.W.2d at 486.[9]

The umpire's charge was to choose an appropriate measure of value and to provide an *accurate* determination of the *true* value of the Property and the Loss under

---

[8]Cogswell Properties argues that none of the grounds for vacating an arbitration award under § 10(a) exist in this case. *See* 9 U.S.C. § 10(a). Because the FAA claim was forfeited below, we need not consider this argument.

[9]Cogswell Properties argues that the district court erred in relying upon *Detroit-Automobile Inter-Insurance Exchange v. Gavin*, 331 N.W.2d 418 (Mich. 1982), because its holding is specifically limited to statutory arbitration cases, and the district court improperly applied several legal principles derived from *Gavin*. We agree that *Gavin* does not control.

the broad evidence rule. The gross disparity between the Actual Cash Value of the Property and the Actual Cash Value of the Loss on this record clearly evidenced a manifest mistake because it did not result in an accurate estimate of the true value of the Loss. As the district court held, "the loss portion comprising less than four percent of the entire square footage of the Property was valued at approximately 48 percent of the whole." If, as Cogswell Properties suggested in the district court, the destroyed property was worth more than the remainder, use of two separate valuation methods might have resulted in an accurate estimate of the value of the loss. However, as the district court found, Cogswell Properties failed to present any proof to support that claim. Furthermore, Cogswell Properties did not pay for the optional coverage providing replacement cost.

By using different valuation methods for the actual cash value of the Property as a whole and the actual cash value of the Loss, the umpire not only "improperly ascribed different meanings of the [actual cash value] for each of those determinations when the Policy calls for one consistent definition of value," it rendered an "illogical" result that contravened the purpose of the broad evidence rule to formulate "a correct estimate of the value of the destroyed or damaged property." *Davis*, 259 N.W.2d at 438.

## III. Conclusion

Cogswell Properties's attempt to recast the appraisal provision as an arbitration provision is understandable because the FAA might have afforded a more deferential standard of review to the arbitrator's decision. However, the parties agreed under Michigan law to the appraisal process. The district court applied the appropriate standard of judicial review and applied it correctly. For the foregoing reasons, the judgments of the district court are **AFFIRMED.**