NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0378n.06

Case No. 20-6440

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED

Aug 04, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| SOUND INPATIENT PHYSICIANS, INC.; ROBERT A. BESSLER, M.D., | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| T.M. CARR, M.D., | ) ) | |
| Defendant-Appellee, | ) ) | |
| THE COMMERICAL APPEAL, | ) ) | OPINION |
| Intervenor. | ) | |

BEFORE:  GIBBONS, STRANCH, and BUSH Circuit Judges.

JOHN K. BUSH, Circuit Judge.  Someone once asked Abraham Lincoln how many legs a donkey would have if you called its tail a leg.  He answered four; "you cannot make a tail into a leg by calling it one."  Lloyd Reinhardt, *Warranted Doability*, 63 Philosophy 471 (1988).  Today, we are asked whether a contract provision that bears the classic attributes of binding arbitration is instead a non-binding appraisal agreement if the provision says that an "expert and not an arbitrator" is to resolve the parties' disputes.  As with the donkey's tail, relabeling the decision maker in an arbitration agreement does not change the nature of the agreement.  The district court held as much.  We affirm.

I.

In March 2016, Dr. T.M. Carr entered into an agreement with Sound Inpatient Physicians, Inc. and Dr. Robert Bessler, through which Sound was to purchase Dr. Carr's membership interests in three medical companies. The agreement required that Sound pay Dr. Carr a purchase price that was equal to a multiple of the companies' consolidated earnings before overhead during the twelve-month period ending March 31, 2018. The price could be no less than $30,000,000 and no greater than $59,000,000. Sound was to pay Dr. Carr in two installments—one non-refundable $30,000,000 payment when the agreement was signed and another unspecified payment after the purchase price calculation was finalized. The second payment would amount to the difference, if any, between the final price and the initial payment.

According to the agreement, Sound was to prepare and deliver to Dr. Carr a proposed final determination of the purchase price by April 30, 2018. Sound needed to show its work, and Dr. Carr had the right review it and object. If the parties could not resolve their differences, they were to submit their disputes to a third party—a neutral accountant—who would resolve the disputes within certain parameters. The purchase price generated by the procedure would be final and binding on the parties.

Sound delivered its proposed purchase price of $26,605,885 to Dr. Carr on April 27, 2018. Because it was less than the initial $30,000,000 payment, that price would result in no second installment to Dr. Carr. Dr. Carr objected and wrote to Sound, demanding that it correct what he saw as an accounting error. He accused Sound of improperly including in its purchase price calculation certain bad debt expenses that related to periods outside the relevant calculation period. According to Dr. Carr's calculation, the purchase price should have been $40,734,142, which would result in a second installment of $10,734,142 to him. The parties could not resolve their

differences, so Dr. Carr advised Sound that he wanted to submit the dispute—which he characterized as "whether it was appropriate for Sound to include in its calculation of the Purchase Price Schedule [the] bad debt expenses"—to a neutral accountant for resolution. But Sound refused to submit the limited question proposed by Dr. Carr. It was prepared to engage a neutral accountant only if Dr. Carr agreed to its framing of the question put to the accountant. Dr. Carr rejected Sound's interpretation of his objection and pressed once again for the issue, as he saw it, to be presented to a neutral accountant.

Soon thereafter, Sound filed suit in federal district court asking for a declaratory judgment. According to Sound, the parties had a dispute as to the proper construction of their agreement and the role of the neutral accountant. Dr. Carr filed, among other things, a motion to compel arbitration under the Federal Arbitration Act. The district court granted Dr. Carr's motion, finding that section 1.4(d) of the parties' contract was a valid arbitration provision.

The parties then picked a neutral accountant, Mr. Steven Wolf, to resolve their dispute and proceeded to arbitration. During that process, the parties submitted arguments to Mr. Wolf in the form of written letters describing their position and provided documents and exhibits that supported their proposed calculations.

On March 20, 2020, Mr. Wolf determined that Sound's inclusion of bad debt expenses relating to a prior period was improper. He did not recalculate the purchase price, but his decision meant that the purchase price would be Dr. Carr's $40,734,142 calculation.

About a month later, after Sound refused to pay, Dr. Carr moved to confirm his arbitration award under the FAA. Sound moved to vacate the award. The district court granted Dr. Carr's motion and denied Sound's. Sound appeals that decision, in addition to the district court's earlier order compelling arbitration.

II.

We review a district court's decision to compel arbitration under the FAA de novo. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 501–02 (6th Cir. 2007). In reviewing a district court's decision to confirm, vacate, or modify an arbitration award under the FAA, we examine its legal determinations de novo and its factual findings for clear error. *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003).

A. MOTION TO COMPEL ARBITRATION

Before compelling arbitration under the FAA, a court must determine "whether the parties agreed to arbitrate." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Here, Sound challenges the district court's decision that it and Dr. Carr's contract included a binding arbitration agreement.

In reviewing the question, we look to state law—here, Tennessee law—for general issues of contract formation and enforceability. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). But federal law—namely, the FAA—governs issues that are specific to arbitration, like whether certain contractual language should be considered an arbitration agreement. *Evanston Ins. Co. v. Cogswell Properties, LLC*, 683 F.3d 684, 693 (6th Cir. 2012); *see Fazio v. Lehman Bros.*, 340 F.3d 386, 393 (6th Cir. 2003) (recognizing the FAA's preemption of state law relating to arbitration).[1]

Whether an "appraisal provision" like the one at issue here qualifies as an agreement to arbitrate "under the FAA depends upon how closely it resembles classic arbitration." *Evanston*

---

[1] Sound contends that state law applies wholesale, and that because Tennessee law does not say much about arbitration, we might look to the Court of Chancery of Delaware, and Delaware law, which does. But the Court of Chancery points us back to federal law. *See Penton Bus. Media Holdings, LLC v. Informa PLC*, No. CV 2017-0847-JTL, 2018 WL 3343495, at *14 n.104 (Del. Ch. July 9, 2018) (recognizing that the Sixth Circuit evaluates whether parties have formed an agreement to arbitrate by looking to federal law (citing *Evanston Ins. Co.*, 683 F.3d at 693)).

*Ins. Co*, 683 F.3d at 693. The common features of classic arbitration include: (1) "a final, binding remedy by a third party;" (2) an "independent adjudicator;" (3) "substantive standards;" and (4) "an opportunity for each side to present its case." *Id.* (quoting *Fit Tech, Inc., v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 7 (1st Cir. 2004)); *see also Shy v. Navistar Int'l Corp*, 781 F.3d 820, 825 (6th Cir. 2015).[2] The provision at issue in this case contains each of those features.

*Final, binding remedy by a third party.* Sound argues that as the relevant third party, Mr. Wolf had no authority to issue any remedy. It is mistaken. The remedy in an arbitration is the third-party's final and binding resolution of the parties' dispute. *See* Arbitration, Black's Law Dictionary (11th ed. 2019). Here, the binding remedy is found in Mr. Wolf's expert opinion, which resolved the parties' dispute as to the proper calculation method for the purchase price. While Mr. Wolf did not recalculate the purchase price, he resolved the only issue in dispute between the parties as to that price, effectively setting the purchase price for the parties. The contract dictates that "such resolution by [Mr. Wolf] shall be final and binding on the Parties."

*Independent adjudicator.* Sound does not contest this factor. And for good reason. The contract clearly identifies an independent adjudicator: the "Neutral Accountant," Mr. Wolf.

*Substantive standards.* Sound also fails to contest that the contract included substantive standards; it simply argues that Mr. Wolf failed to follow the standards prescribed in the agreement. Effectively then, Sound concedes that the agreement contained substantive standards for Mr. Wolf to abide by. Again, for good reason. The contract details the general accounting procedure for calculating the purchase price that Mr. Wolf had to follow, and it specifies that Mr.

---

[2] Dr. Carr cites a number of our cases that reference the federal presumption in favor of arbitration. But that presumption applies only to the scope, not the existence, of an arbitration clause. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010) ("We have applied the presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed[.]").

Wolf's resolution of any dispute regarding the purchase price had to be "within the range of the amounts claimed by Dr. Carr and Sound in their written submissions."

*Opportunity to be heard.* Sound contends that because there were no witnesses and no formal hearing, there was no opportunity to be heard. But arbitration is not usually "bound by formal rules of procedure and evidence." *Dobson Indus. Inc. v. Iron Workers Loc. Union No. 25*, 237 F. App'x 39, 48 (6th Cir. 2007) (quoting *Nat'l Post Office Mailhandlers v. U.S. Postal Service*, 751 F.3d 834, 841 (6th Cir. 1985)). All that is required is a fundamentally fair hearing, meaning "an opportunity to present relevant and material evidence and arguments" and an "absence of bias." *Louisiana D. Brown 1992 Irrevocable Tr. v. Peabody Coal Co.*, No. 99-3322, 2000 WL 178554, at *6 (6th Cir. Feb. 8, 2000). Sound and Dr. Carr received just that.

According to the contract, after engaging the neutral accountant, "[e]ach of Sound and Dr. Carr [was to] present its position on the disputed items to the Neutral Accountant in writing." So both parties had the opportunity to provide written briefing to Mr. Wolf. And the agreement did not prohibit either party from including witness statements or other exhibits in their briefing. In fact, both parties attached schedules and exhibits to their briefs, and Sound even noted that it could and would provide supplemental briefing and evidence to Mr. Wolf if needed.

In sum, the agreement bears all the classic attributes of arbitration. *See, e.g.*, *Evanston Ins. Co.*, 683 F.3d at 693.

Despite that, Sound argues that because the agreement says that "the Neutral Accountant" will resolve the matters in dispute "acting as an expert and not an arbitrator," the agreement cannot be considered one for arbitration. Or at the very least, Sound submits, it makes the agreement ambiguous such that a remand is necessary to consult extrinsic evidence. Sound's argument misses the point.

In *Omni Tech Corp. v. MPC Solutions Sales, LLC*, the Seventh Circuit addressed this exact issue. 432 F.3d 797, 799 (7th Cir. 2005). It explained that a contractual statement providing that a neutral accountant "will act as an expert and not as an arbitrator means that it will resolve the dispute as accountants do—by examining the corporate books and applying normal accounting principles plus any special definitions the parties have adopted—rather than entertaining arguments from lawyers and listening to testimony." *Id.* at 799. "It does not imply that the whole section of the contract committing resolution to an independent private party is hortatory." *Id.*

That understanding makes sense of the agreement before us. Otherwise, the agreement, with all its parts, would read: the neutral decision-maker (Mr. Wolf) will act as an expert, appointed by the parties to make a final and binding decision resolving the parties' dispute, not as a "neutral decision-maker . . . appointed by the parties . . . to make a final and binding decision resolving the parties' dispute." *See* Arbitrator, Black's Law Dictionary (11th ed. 2019). That is nonsensical, not ambiguous. *See, e.g.*, *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) ("Contractual language is 'ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.'" (quoting *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975))).

At bottom, "[t]hat the parties may call a procedure for having a neutral third party make a binding decision 'expert resolution' does not make that procedure less 'arbitration'." *Blue Cross Blue Shield of Mass, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 637 (7th Cir. 2011) ((quoting *Omni Tech Corp.*, 432 F.3d 797)).

Finally, consulting Tennessee law, as Sound requests, confirms our conclusion. Consistent with federal law, "Tennessee cases define arbitration [as] 'a consensual proceeding in which the parties select decision-makers of their own choice and then voluntarily submit their disagreement

to those decision-makers for resolution in lieu of adjudicating the dispute in court.'" *Urology Assocs, P.C. v. CIGNA Healthcare of Tenn., Inc.*, 2002 WL 31302922, at \*7 (Tenn. Ct. App. Oct. 11, 2002) (quoting *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn. Ct. App. 2001). What matters, again, is not the label attached to the neutral accountant, but the parties' agreement to be bound by a third party's resolution of their dispute. And here, Sound and Dr. Carr unambiguously agreed to a process whereby they would submit their dispute to a third party, who would issue a binding resolution.[3]

B. MOTIONS TO CONFIRM AND VACATE OR MODIFY THE ARBITRATION AWARD

The FAA authorizes a party to apply to a court "for an order confirming" an arbitration award where the parties' agreement allows for judicial confirmation. 9 U.S.C. § 9. The Act further clarifies that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." *Id*. Section 10 permits a party to apply to the court for an order vacating the award in narrow circumstances, such as "where the award was procured by corruption, fraud, or undue means." *Id.* § 10(a)(1). And section 11 permits a party to apply for an order modifying or correcting the award in other narrow circumstances, such as "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." *Id.* § 11(a).

---

[3] Sound also asks us to consult the Court of Chancery of Delaware as persuasive authority. But that court's understanding of the issue is not as clear as Sound alleges. The Court of Chancery has said in some cases, for example, that where a contract says that an "expert is *not* acting as an arbitrator," an expert's decision in a dispute resolution proceeding is not arbitration. *EMSI Acquisition, Inc. v. Contrarian Funds, LLC*, No. 12648-VCS, 2017 WL 1732369, at \*16 (Del. Ch. May 3, 2017). But in others, it has said that dispute resolution proceedings are covered by the FAA's definition of arbitration despite that type of "nomenclature." *Viacom Int'l, Inc. v. Winshall*, No. 7149-CS, 2012 WL 3249620, at \*11 n.78 (Del. Ch. Aug. 9, 2012) ("[E]xpert and not [] arbitrator" language "means that [a third party] will resolve the dispute as [an expert would] . . . It does not imply that the whole section of the contract committing resolution to an independent private party is hortatory." (quoting *Omni Tech Corp.*, 432 F.3d at 799)). We agree with the latter understanding.

Sound first argues that the district court erred in confirming the arbitration award, and thus that we should remand for vacatur or modification, because there was no arbitration agreement in the first place. We have already determined that there was an agreement to arbitrate, so we need not discuss the issue further.

Next, Sound seems to argue that the district court should have reviewed the merits of Mr. Wolf's opinion de novo; it claims it contracted for that very type of judicial review. But courts generally "are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998) (quoting *Shelby County Health Care Corp v. Am. Fed'n of State, County & Municipal Employees*, 967 F.2d 1091, 1094 (6th Cir. 1992)). Nor can parties contract for broader review of an arbitration award beyond the narrow circumstances listed in the FAA. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 583–84 (2008).

Finally, to the extent that Sound argues that there was simply no award contemplated in the agreement, it does so in a conclusory fashion. Regardless, it is not difficult to see the award contemplated by the contract. Mr. Wolf's resolution of the dispute regarding the purchase price is the award. And the parties agreed that Mr. Wolf's determination "shall be final and binding" on them. *See, e.g.*, *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.*, 639 F.2d 386, 389–90 (7th Cir. 1981) (listing cases where language providing for a final and binding decision upon the parties was sufficient to meet the requirements of the FAA, 9 U.S.C. § 9). Moreover, confirmation of a valid arbitration award "is a summary proceeding and the court *must* confirm the award where [it] is not vacated, modified, or corrected." *Wachovia Sec. Inc. v. Gangale*, 125 F. App'x 671, 676 (6th Cir. 2005). Thus, having found that an award exists, the FAA "presumes"

that it will be confirmed.  *Id.*  Following that instruction, the district court confirmed the award in this case.

We affirm.