AUTO-OWNERS INSURANCE COMPANY v KWAISER

Docket No. 128236. Submitted June 12, 1991, at Lansing. Decided August 5, 1991, at 9:05 A.M.

Auto-Owners Insurance Company brought an action in the Saginaw Circuit Court against Robin Kwaiser, seeking a declaration that an appraisal of the damages to the defendant's residence, which was conducted after the parties could not agree on a settlement for storm-related damages, was null and void because the appraisers failed to determine the scope of coverage when assessing the damage to the residence and erred in determining the amount of damage to personal property. The defendant counterclaimed, seeking a judgment in accordance with the amount of the appraisal. The court, Lynda L. Heathscott, J., granted summary disposition for the defendant, and ordered the plaintiff to pay the appraisal amount. The plaintiff appealed.

The Court of Appeals *held:*

The court erred in granting summary disposition for the defendant without first determining the extent of coverage, requiring remand to the trial court for a determination of the policy's coverage of the loss for damages to the residence and Auto-Owners' liability. The personal property appraisal award was not erroneous.

1. The issue of coverage is for the court, not the appraisers. Where the parties cannot agree on coverage, the court must determine coverage before there is an appraisal of the damages to the property.

2. The amount of loss attributable to personal property damage, as determined by the appraisers, is conclusive. The appraisers' decision with regard to what particular articles or items of property are embraced within the general description of the property to be appraised is final and conclusive.

Affirmed in part, reversed in part, and remanded.

*Peter C. Payette, P.C.* (by *Peter C. Payette*), for the plaintiff.

*McDonald & McCoy, P.C.* (by *Patrick D. McCoy*), for the defendant.

Before: McDonald, P.J., and MacKenzie and Fitzgerald, JJ.

Fitzgerald, J. The roof over the living room of defendant Robin Kwaiser's mobile home collapsed because of heavy rain. An engineer hired by defendant's homeowner's insurer, plaintiff Auto-Owners Insurance Company, discovered that the structure of the entire roof was rotted because of long-term trapped moisture and that any repair involved replacement of the entire roof. Auto-Owners could not agree on a settlement of the claim, and asked for an appraisal as provided for in the policy. Following the appraisal, Auto-Owners brought this declaratory judgment action, asking the court to order the matter resubmitted for appraisal after a clarification of the insurer's liability. Following a hearing, Saginaw Circuit Court Judge Lynda L. Heathscott granted defendant's motion for summary disposition, denied Auto-Owners' motion for summary disposition, and ordered Auto-Owners to pay defendant the appraisal amount. Auto-Owners appeals as of right from the judgment, claiming that the appraisal was not properly premised on the policy's coverage.

I

Auto-Owners paid defendant $6,801.70 for replacement of the portion of the new roof that covered the living room.[1] Defendant disagreed with Auto-Owners' assessment of the damages and sub-

---

[1] Auto-Owners relied on the following provisions of the property protection section of the policy in determining the extent of its liability:

ADDITIONAL COVERAGES

*  *  *

7. Collapse
We cover risk of direct physical loss involving collapse to

mitted three appraisals, all valued at over $28,000, presumably covering complete replacement of the roof as well as loss of personal property. When defendant did not accept the payment as full coverage for her claim, Auto-Owners asked for an

property insured under the Dwelling, Other Structures and Personal Property Coverages only if:

a. the loss involves collapse of a building or part of a building; and

b. the collapse is caused by any of the following:

(1) hidden decay, hidden insect damage or hidden vermin damage;

(2) weight of people, contents, animals, equipment and/or furniture;

(3) defective material or defective methods used in construction, reconstruction, renovation or remodeling;

(4) weight of rain on a roof; or

(5) Perils We Insure Against in this policy.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

\* \* \*

EXCLUSIONS

We do not cover loss caused directly or indirectly by any of the following, whether or not any other cause or happening contributes concurrently or in any sequence to the loss:

\* \* \*

6. Neglect of an insured person to use all reasonable means to protect covered property at and after the time of loss.

\* \* \*

Under Dwelling and Other Structures Coverages except as to ensuing loss not otherwise excluded, we do not cover loss resulting directly or indirectly from:

\* \* \*

2. Wear and tear; marring or scratching; deterioration; inherent vice; latent defect; mechanical breakdown; rust; mold; wet or dry rot; discharge, dispersal or release of pollutants or contaminants; smog; smoke from agriculture smudging or industrial operations; settling, cracking, shrinkage, bulging or expansion of pavement, patios, foundations, walls, floors, ceilings; birds, vermin, rodents, insects or domestic animals. If because of any of these, water escapes from a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance, we cover loss caused by the water. We also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escapes.

appraisal in accordance with the statutorily mandated provision of the policy:

Appraisal

If you and we fail to agree on the actual cash value or amount of loss, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

See MCL 500.2832; MSA 24.12832.

On appeal, Auto-Owners argues that the appraisers failed to determine the scope of coverage when assessing defendant's damages. Auto-Owners contends that the appraisers did not consider the policy exclusions and therefore assessed the amount of damage to the entire roof. Auto-Owners further argues that the appraisers acted beyond their authority in making an award for damage to personal property that they did not actually see. Defendant argues that the appraisal process resolves the amount of the loss, not the insurer's

liability, and that in the absence of bad faith or fraud, the award should not be set aside.

II

This Court has referred to the appraisal process mandated by statute and contained in defendant's homeowner's policy as a "substitute for judicial determination of a dispute concerning the amount of a loss," which is "a simple and inexpensive method for the prompt adjustment and settlement of claims." *Thermo-Plastics R & D, Inc v General Accident Fire & Life Assurance Corp, Ltd,* 42 Mich App 418, 422; 202 NW2d 703 (1972). This appraisal process has been held to be the product of a common-law arbitration agreement rather than statutorily mandated arbitration, and thus is not subject to as strict a standard of review as statutorily mandated arbitration. *Davis v National American Ins Co,* 78 Mich App 225, 232; 259 NW2d 433 (1977). Judicial review of the award is limited to instances of bad faith, fraud, misconduct, or manifest mistake. *Port Huron & N R Co v Callanan,* 61 Mich 22, 26; 34 NW 678 (1887); *Davis, supra* at 232.[2] Auto-Owners has not alleged that any of the exceptions apply. Rather, Auto-Owners disputes the coverage provided.

Matters of an insurance policy's coverage are generally for a court and not for appraisers. *Safeco Ins Co of America v Sharma,* 160 Cal App 3d 1060, 1063; 207 Cal Rptr 104 (1984); *In re Empire Mutual Ins Co,* 51 AD2d 909; 381 NYS2d 67 (1976); *St Paul Fire & Marine Ins Co v Wright,* 97 Nev 308, 310-311; 629 P2d 1202 (1981); 14 Couch, Insurance, 2d, § 50:175, p 283. *Davis, supra,* proceeded on

[2] Both parties have stipulated to an appraisal award of $29,000 should the trial court determine that coverage is provided for the entire roof.

such a principle. After determining that an award should not be upset where there was no bad faith in the umpire's method of reaching actual cash value, the *Davis* Court turned to another portion of the award and upheld the trial court's interpretation of the policy that the "other insurance" exclusionary clause did not apply to modify the award.

We conclude that the issue of coverage is for the court, not the appraisers. The appraisal process cannot legally settle coverage issues, as suggested by Auto-Owners. Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property. Consequently, the trial court erred in granting summary disposition to defendant without first determining the extent of coverage. The case must be remanded to the trial court for determination of the policy's coverage of the loss and Auto-Owners' liability.

III

Auto-Owners also asserts that the appraisers acted beyond their authority in making an award for damage to personal property that they did not see.

After the collapse of the roof, defendant, who held the belief that the mobile home was unsafe to enter, did not retrieve personal property from the home, and the items mildewed. Defendant subsequently discarded the items because of their deteriorated condition. Auto-Owners limited payment for the personal property under the "what to do in case of loss" provision of the policy:

> [T]he insured person must . . . protect the property from further damage; . . . [and] exhibit the

damaged property to us or our representative as often as may be reasonably required.

The amount of loss attributable to personal property damage, as determined by the appraisers, is conclusive. The decision of the appraisers with regard to what particular articles or items of property are embraced within the general description of the property they are to appraise for damages is final and conclusive. See 14 Couch, Insurance, 2d, § 50:55, p 205. Although the policy requires defendant to "exhibit the damaged property to us or our representative as often as may be reasonably required," the appraisers' decision to award for loss without seeing some of the property, as apparently occurred in this case, reflects the method of determining the loss rather than a matter of coverage. The personal property appraisal award is affirmed.

Affirmed in part, reversed in part, and remanded for determination of the scope of coverage.