DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an order denying replacement of an "appraisal umpire" and a judgment confirming the umpire's award issued by the Fulton County Court of Common Pleas. Further for the reasons that follow, we affirm.
 {¶ 2} Appellee Laura Pilliod and her 13-year-old son live in the Swanton, Ohio house she and her former husband acquired in 1991. Laura was awarded the home in a 1997 divorce.
 {¶ 3} From the beginning, Laura Pilliod's home was insured by a Westfield Insurance policy that she purchased through the Rudy Stapleton and Sons Insurance Agency. In May 2001, however, an untimely funds transfer caused Pilliod's premium check to Westfield to be returned "insufficient funds." As a result, Westfield canceled coverage and refused to reinstate the policy.
 {¶ 4} To avoid a lapse in coverage, Stapleton bound coverage of the Pilliod home with another carrier, appellant Auto Owners Insurance Company, dba Home Owners Insurance. Shortly thereafter, Stapleton sent Pilliod policy applications for home, auto and umbrella policies. Accompanying the application was a statement for $852.40, representing the initial premium for all three policies.
 {¶ 5} Laura Pilliod signed the auto and umbrella policy applications and delivered them with a check for $852.40 to Stapleton on May 21, 2001. She was concerned, however, about certain coverage reductions in her homeowner's policy. She asked Stapleton to inquire with appellee Auto Owners as to whether coverage comparable to that in her old policy could be obtained.
 {¶ 6} The events that follow are disputed. On May 30, a Stapleton agent spoke with Pilliod, advising her that the additional coverage she sought was unavailable through Auto Owners. Pilliod and the agent agree that this conversation concluded with Pilliod indicating that she intended to seek homeowner's coverage with a different agent and a different insurer. Pilliod, however, insists that the Stapleton agent assured her that the earlier binder through Auto Owners would continue through June 4. The Stapleton agent denies this assurance, but there is testimony from another independent agent with whom Pilliod consulted the next day that she declined his offer to bind coverage because of Stapleton's assurance. On May 31, 2001, fire gutted Pilliod's home, causing extensive damage to the structure and its contents.
 {¶ 7} As part of a separate lawsuit, Pilliod alleges that Auto Owners determined that their binder issued by Stapleton was valid, but that Stapleton may have exceeded its binding authority. As a result of this determination, Pilliod alleges, Auto Owners elected to wait to see if Stapleton's errors and omissions policy would cover the loss. It is undisputed that no one took any action on Pilliod's loss for several months. During this time, without other resources, Pilliod and her son lived in the basement of her burned out home.
 {¶ 8} In September 2001, Pilliod retained counsel. On October 31, 2001, Auto Owners apparently conceded that there was coverage. The following month, Auto Owners retained an independent claims adjuster, appellant James Stewart, to handle Pilliod's claim. At that point, restoration of Pilliod's home began with appellee Michael Cousino as the restoration contractor.
 {¶ 9} In February 2002, Pilliod sued Auto Owners in Lucas County, alleging bad faith. While the bad faith suit was pending, the parties agreed to resolve the issue of structural restoration, damage to contents and loss of use pursuant to the "appraisal clause" in the Auto Owners homeowner's policy. Under this provision, the insurer and the claimant each appoint an "appraiser." The two appraisers then appoint an "impartial umpire" who is tasked with resolving issues between the appraisers, should they not agree. Here, Auto Owners appointed James Stewart; Pilliod appointed Michael Cousino.
 {¶ 10} When Stewart and Cousino were unable to agree on an umpire, appellee Cousino, in conformity with the Auto Owners' appraisal provision, petitioned the Fulton County Court of Common Pleas to select such a person. Auto Owners and Pilliod also intervened in this proceeding. Eventually, the parties stipulated to an order naming attorney David Ward as umpire.
 {¶ 11} On his appointment, Ward promptly contacted counsel for both Pilliod and Auto Owners, defining the parameters of the inquiry and obtaining agreement on how to proceed. On September 14 and 15, 2004, Ward met with both appraisers and conducted separate site inspections accompanied first by Laura Pilliod and her counsel, then by Stewart and his counsel. On September 19, 2004, Ward issued an appraisal opinion, generally, but not wholly, favoring Pilliod/Cousino.
 {¶ 12} On October 1, 2004, Auto Owners moved to replace the umpire, arguing that he had failed to maintain his impartiality with respect to the appraisal. Appellees responded with a memorandum in opposition to the motion and their own motion seeking that the Fulton County court confirm the appraisal awarded. All parties submitted extensive briefing on these issues, including depositions and affidavits of those involved. On December 21, 2004, the trial court found that appellants had failed to show partiality by the umpire, any infirmity in his methods or unreasonableness in his conclusions. On this finding, the trial court denied appellants' motion to replace the umpire and confirmed the umpire's "arbitration appraisal" award. On February 15, 2005, the court issued a confirmation of a supplemental appraisal award, addressing issues left unresolved in the first award.
 {¶ 13} From these judgments, appellants filed separate notices of appeal. These appeals have since been consolidated. Appellants set forth the following three assignments of error:
 {¶ 14} "1. The common pleas court erred in granting judgment in favor of Pilliod on December 22, 2004.
 {¶ 15} "2. The common pleas court erred in granting judgment in favor of Pilliod on February 15, 2005.
 {¶ 16} "3. The common pleas court erred when it failed to remove David A. Ward as umpire."
 I. Appraisal v. Arbitration {¶ 17} In their first two assignments of error, appellants argue that the trial court was without jurisdiction to confirm any award in this matter, because confirmation of an award is only available under R.C. Chapter 2711 for arbitration awards, not appraisals. Appellees respond that, irrespective of the labels placed upon the proceedings at issue, the essence of the agreement of referral was to resolve all of the contractual claims related to the fire and the result was to be binding. Thus, appellees maintain, this exercise falls squarely within the bounds of statutory arbitration and the trial court did not exceed its authority in confirming the award. Moreover, according to appellees, appellants waived any jurisdictional attack by failing to raise such a challenge in the trial court.
 {¶ 18} The difference between appraisal and arbitration presents what seems like a moving target. Some courts have concluded that there is no difference or that the difference is immaterial. See 21 Williston on Contracts (4 Ed. Lord.Ed. 2001) 78, Section 57:8; The Phoenix Ins. Co.v. Carnahan (1900), 63 Ohio St. 258, 268. Others hold that when the only question presented is the amount of the loss, it is an appraisal. TheRoyal Ins. Co. v. Ries (1909), 80 Ohio St. 272, 283. It is suggested that the difference is in the formality of the inquiry: an appraisal is conducted by personal examination and observation — an arbitration implicates solicitation of testimony from witnesses. Id. at 284; Williston, supra. The scope of the inquiry may be determinative: arbitration occurs when the parties intend that the arbitration determine the whole controversy, including ultimate liability. Id. at 82, citingWorld Brilliance Corp. v. Bethlehem Steel (C.A.2, 1965), 342 F.2d 362. Alternatively, an arbitration may encompass an entire controversy or be tailored to a particular legal or factual dispute. Guilder v. LCICommunications Holdings Co. (1993), 87 Ohio App.3d 412, 419, citingHartford Lloyds Ins. Co. v. Teachworth (C.A.5, 1990), 898 F.2d 1058,1061-1062 (applying Texas substantive law). An arbitration award must be final, binding and without qualification. A determination which is not, is not the result of an arbitration. Schaefer v. Allstate Ins. Co.
(1992), 63 Ohio St.3d 708, 711.
 {¶ 19} Both appraisal and arbitration are creatures of contract, seeAFSCME v. Dept. of Mental Health (1984), 9 Ohio St.3d 139, 142; Steinerv. Appalachian Exploration, Inc. (1986), 31 Ohio App.3d 177, 179, and may be defined and classified under ordinary contract principles.
 {¶ 20} The insurance policy at issue in this matter contains the following provision:
 {¶ 21} "APPRAISAL
 {¶ 22} "If you and we fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.
 {¶ 23} "The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss."[1]
 {¶ 24} The provision is not unique to this policy or this state. In Michigan, the exact same language was statutorily mandated until 1992 to be included in all Michigan fire insurance policies. See former M.C.L. §500.2832; M.S.A. § 24.12832. Michigan courts construed the clause to be a common law arbitration agreement. Auto-Owners Ins. Co. v. Kwaiser
(1991), 190 Mich.App. 482, 486. Similar language was construed in Connecticut, North Carolina and Florida. In Connecticut, the clause was deemed to be an arbitration clause. Reyes v. Allstate Ins. Co. (May 18, 1996), Conn.Super. No. CV950377725S, citing Covenant Ins. Co. v. Banks
(1979), 177 Conn. 273, 280. In North Carolina, a court ruled the provision not to be an arbitration clause because of additional language which reserved the right to the insurer to reject the appraisal. Making the appraisal procedure nonbinding took it out of the North Carolina arbitration statute. PHC, Inc. v. North Carolina Farm Bur. Mut. Ins. Co.
(1998), 129 N.C.App. 801, 8048-05. In Florida, the Supreme Court overruled the decisions of two Florida appellate courts, concluding that the language at issue failed to delineate the formal procedures mandated in the Florida arbitration statute and was, therefore, not an arbitration provision. Allstate Ins. Co. v. Suarez (2002), 833 So.2d 762, 765.
 {¶ 25} What this exercise tells us is that the clause at issue may or may not be construed as an arbitration clause depending on state law. Our next step then is to determine whether Ohio law expressly includes or excludes the proceeding described as an arbitration.
 {¶ 26} R.C. Chapter 2711 does not manifestly describe what an arbitration is or what it should look like. R.C. 2711.01 provides that, save certain exceptions, arbitration provisions in a written contract are as valid and enforceable as any contract provision. R.C. 2711.02 permits a trial court to stay a proceeding pending resolution of an issue referred to arbitration. R.C. 2711.03 allows a party to invoke the power of the court to enforce a written arbitration agreement. R.C. 2711.08, et seq. require that an award must be in writing and provide for judicial confirmation and appeal of such awards.
 {¶ 27} More instructive for our purposes are R.C. 2711.04 and2711.06. These statutes, in material part, provide:
 {¶ 28} "2711.04. Appointment of arbitrator.
 {¶ 29} "If, in the arbitration agreement, provision is made for a method of naming or appointing an arbitrator or an umpire, such method shall be followed. * * * Unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator. (Emphasis added.)
 {¶ 30} "2711.06. Powers and duties of arbitrators; subpoena of witnesses, failure to obey.
 {¶ 31} "When more than one arbitrator is agreed to, all the arbitrators shall sit at the hearing of the controversy unless, by consent in writing, all parties agree to proceed with the hearing with a less[er] number. The arbitrators selected * * * may administer oaths or affirmations to witnesses, fix the time and place of their hearings, adjourn their meetings from day to day or for a longer time, and also from place to place, and may subpoena [witnesses]. * * * If any person so subpoenaed to testify refuses or neglects to obey such subpoena, upon petition, the court of common pleas * * * may compel the attendance of such person before said arbitrators, or punish said person for contempt in the same manner provided for securing the attendance of witnesses or their punishment for neglect or refusal to attend in such court."
 {¶ 32} Clearly, the language of R.C. 2711.04 equates an "umpire" with an "arbitrator." Since the provision at issue here calls for the appointment of an "umpire," the use of this characterization seems to bring the policy language with the arbitration statutes.
 {¶ 33} With respect to R.C. 2711.06, the statute seems to contemplate that the arbitration proceeding invoke some type of hearing, but does not seem to require a specific structure or form for such a hearing. Much deference is afforded to the agreement of the parties in shaping the nature of this proceeding.
 {¶ 34} Since there is a suggestion in the language of the insurance contract that the appraisal clause might be intended as an arbitration clause and there is nothing in the clause which is antithetical to the arbitration statutes, we must conclude that the provision is, at least, ambiguous. When there is ambiguity in the provision of a contract, extrinsic evidence may be employed to resolve the ambiguity. IllinoisControls, Inc. v. Langham (1994), 70 Ohio St.3d 512, 521. In this matter, as part of their trial court memorandum in opposition to appellants' motion to replace the umpire, appellees, within an affidavit attesting accuracy, submitted correspondence between the parties regarding the nature of the referral to the "appraisal" panel. One of these is a fax communication from appellees' counsel to appellants' counsel, confirming that appellees accept appellants' "* * * offer to resolve through appraisal all remaining claims related to losses from the fire [which] will be binding upon both parties." Included in the same set of exhibits, as well as separately with the umpire's response to the motion, is a communication from appellants' counsel defining the parameters of the proceedings:
 {¶ 35} "As to rules for appraisal, there really aren't any per se. The policy provides that each party will name its own appraiser and the appraisers will then agree on an umpire. No specifics are provided for the process beyond that. I have seen number of methods used ranging from very informal to very formal. The main issues are always: (1) What is covered by the policy? (2) What is the reasonable cost or repair or replacement of covered items? And (3) What items are repairable or cleanable and what items must be replaced?"
 {¶ 36} The validity of these documents is unrefuted in the record.
 {¶ 37} Considering all the documents together with the appraisal clause in the insurance contract we must conclude that this proceeding was an arbitration. The use of an "umpire" tracks the language of the arbitration statute. The proceeding was intended to be binding. The scope of the appraisal was beyond only setting values, but also implicated a determination of what is covered by the policy. Although the procedure employed was not a formal hearing, it was agreed upon by the parties and included fact-finding observations and interviews. Accordingly, appellants' assertion that the trial court was without authority to render judgment on the award is without merit. Appellants' first and second assignments of error are not well-taken.
 II. Removal of the Umpire {¶ 38} In their remaining assignment of error, appellants contend that the trial court erred in denying their motion to remove the umpire after he issued a preliminary award unfavorable to them. Appellants note that there is no specific common law or statutory standard for ousting an umpire, but analogize their request to a petition to vacate an arbitration award, pursuant to R.C. 2711.10. According to appellants, under the statute, they must show an "appearance of bias" or that the umpire exceeded his authority under the arbitration agreement.
 {¶ 39} Appellants premise their motion on affidavits from appellant James Stewart, averring that the umpire showed bias by deviating from the appraisal procedures that affiant was used to, having inappropriate contact with the homeowner and the homeowner's attorney, employing a depreciation percentage below industry standards and having a "personal relationship with the homeowner" as evidenced by the umpire having arranged, "to have the homeowner care for the [umpire's] dog while the umpire was in the Toledo area."
 {¶ 40} We note that appellants' reliance on R.C. 2711.10 is new on appeal. Before the trial court, appellants cited no specific authority in support of their request to remove the umpire. In any event, with or without resort to the statute, appellants' assertions are unavailing.
 {¶ 41} R.C. 2711.10 provides:
 {¶ 42} "In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
 {¶ 43} "(A) The award was procured by corruption, fraud, or undue means.
 {¶ 44} "(B) Evident partiality or corruption on the part of the arbitrators, or any of them.
 {¶ 45} "(C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 {¶ 46} "(D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 {¶ 47} "If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators."
 {¶ 48} The standard for setting aside an award is not, as appellants contend, an "appearance of bias," but "evident partiality or corruption." R.C. 2711.10(B); Staff v. State Farm Mut. Ins. Co. (1993),87 Ohio App.3d 440, 444. "The phrase `evident partiality' connotes more than a mere suspicion or appearance of partiality." Id.
 {¶ 49} In this matter, the umpire disclosed a relationship with a party at the outset: he had purchased his own Auto Owners insurance policy through the Stapleton Agency. Moreover, the umpire was David A. Ward, a retired senior vice-president and general counsel for a Fortune 500 company who was the first chair of the Ohio Supreme Court's Committee on Alternative Dispute Resolution and chair of the Ohio Commission on Dispute Resolution and Conflict Management.
 {¶ 50} Both umpire Ward and appellee Pilliod responded to appellants' motion with affidavits and verified supporting documents averring that the deviation from Stewart's appraisal expectations, including separate contact with all parties and their attorneys, was the result of an agreement between the parties and that the umpire's depreciation factor was within industry standards, given the superior quality and maintenance of the items. Ward also denied any personal relationship with Pilliod before, during or after his visit to the fire site. Both Ward and appellee Pilliod averred that the umpire, who was traveling with a large dog, requested permission of appellee Cousino to place the dog in Pilliod's fenced backyard while they inspected the property. None of the testimony submitted in opposition to appellants' motion was ever refuted.
 {¶ 51} On this record, we cannot say that the trial court erred in concluding that appellants failed to meet their burden to show evident partiality or corruption on the part of the umpire. Accordingly, appellants' third assignment of error is not well-taken.
 {¶ 52} On consideration whereof, the judgment of the Fulton County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Fulton County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Skow, J., concur.
[1] At oral argument, there was discussion as to whether the policy at issue did or should have had a signature. After oral argument, appellees moved for leave to brief the issue. Since the question was never before the trial court, it would be inappropriate to now consider it. Schade v.Carnegie Auto Body (1982), 70 Ohio St.3d 207, 210. Accordingly, appellees' motion to file a supplemental brief is denied.