**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0169n.06

Case No. 15-1347

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Mar 23, 2016

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THE D BOYS, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MID-CENTURY INSURANCE COMPANY, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | **OPINION** |
| | ) | |

BEFORE: KETHLEDGE, DONALD, and ROTH[*], Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This is an insurance dispute involving three apartment buildings owned by The D Boys, LLC that sustained roof damage. Mid-Century Insurance Company, which insured the apartment buildings, appeals the district court's grant of summary judgment to D Boys, LLC and its order to pay The D Boys, LLC penalty interest, pursuant to Mich. Comp. Laws Ann. § 500.2006(4). The district court ruled that this dispute was governed by Mich. Comp. Laws Ann. § 500.2833(1)(m), which mandated that both parties participate in Michigan's statutory appraisal process. Mid-Century Insurance Company disagrees with the district court's determination and argues that because it claims that the

---

[*] The Honorable Jane Richards Roth, Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

damage suffered by two of the buildings at issue was not covered under The D Boys, LLC's policy, the district court was obligated to first determine whether the damage sustained by two of the buildings was covered under the policy before compelling the parties to participate in Michigan's appraisal process. We agree, and **REVERSE** and **REMAND** the case to the district court for proceedings consistent with this opinion.

I.

The D Boys, LLC ("D Boys"), owns Philamer Apartments, which is a collection of ten different apartment buildings designated by letters A through J, located at 4319 Judson Road in Royal Oak, Michigan. (Page ID # 735.) Mid-Century Insurance Company ("Mid-Century") issued D Boys an insurance policy covering Philamer Apartments that was effective from April 27, 2011 through April 27, 2012. (Page ID # 35). The policy insured the apartment buildings in the event that they sustained damage from a windstorm, but the policy did not contractually obligate Mid-Century to pay D Boys for damage caused by wear, tear, and deterioration. (Page ID # 248; 426.)

On March 15, 2012, a windstorm allegedly damaged Philamer Apartment buildings C, D, and J. (Page ID # 735.) On March 20, 2012, D Boys filed a claim under the policy alleging that Building J suffered roof damage because of the windstorm. (Page ID # 427.) On March 27, 2012, Mid-Century denied D Boys claim because it took the position that the amount of damage sustained to Building J was less than the policy's deductible. (Page ID # 27.) On May 21, 2012, D Boys filed a second claim for the damage from the windstorm to the roofs of Buildings C and D. (Appellant Br. 9-10.) Mid-Century denied D Boys second claim because it found that the damage to the roofs was caused by wear, tear, and deterioration, not the windstorm. (Appellant Bt. 10-11.)

After Mid-Century denied the claims, D Boys demanded an appraisal for the amount of loss sustained to Buildings C, D, and J. (Page ID # 411; 428.) The appraisal process proved to be unavailing; therefore, D Boys filed the instant action invoking the Michigan appraisal statute, which requires that disputes over the amount of loss in an insurance claim be submitted for appraisal. *See* Mich. Comp. Laws Ann. § 500.2833. In its Answer, Mid-Century denied liability for Buildings C and D, but admitted that the damage suffered to Building J was caused by the windstorm.[1] (Page ID # 17.) Mid-Century also filed a Counter-Complaint, arguing that statutory appraisal would be premature and inappropriate because the parties disputed whether the damage to Building C and D was caused by the windstorm. Thus, Mid-Century asked the district court to hold a hearing to determine if the damage suffered by Buildings C and D was covered under the insurance policy before compelling the parties to participate in the statutory appraisal process. On June 21, 2013, D Boys moved for partial judgment on the pleadings, requesting that the district court compel the parties to participate in Michigan's mandatory statutory appraisal process. (Page ID # 176.) Mid-Century's response largely reiterated the same argument set forth in its Counter-Complaint. (Page ID # 231.)

On October 24, 2013, the district court granted D Boys' motion for partial judgment on the pleadings and compelled the parties to participate in Michigan's statutory appraisal process. (Page ID # 431-32.) The district court determined that since Mid-Century admitted that Building J's damage was caused by the windstorm, "the nature and the extent of the damages incurred by the [other] affected buildings 'present[ed] a scope-of-loss issue'" not a coverage issue. (Page ID # 431.)

---

[1] Mid-Century admitted that the damage to Building J was caused by the windstorm but contends that the damage suffered did not amount to the policy's deductible.

- 3 -

On August 8, 2014, a neutral umpire, appointed by the district court pursuant to Mich. Comp. Laws § 500.2833(1)(m), awarded D Boys the following amounts: $900,000 for the replacement cost, $720,000 for the actual cash value, and $173,000 for lost rent.

On October 17, 2014, D Boys moved for "summary judgment and entry of final judgment on the appraisal award, including interest." (Page ID # 441.) Mid-Century filed a response disputing the penalty interest request and again reiterating its prior argument that the case was improperly submitted to Michigan's appraisal process. (Page ID # 489.) The district court found that Mid-Century waived its right to challenge the appraisal award because its challenge was not timely. (Page ID # 739.) However, the district court also stated that it had previously held that the case was properly turned over to Michigan's appraisal process because "Buildings C and D posed issues of 'scope-of-loss,' not coverage issues." (Page ID # 741.) Ultimately, the district court entered final judgment on the appraisal amount and awarded D Boys penalty interest. (Page ID 745.) This timely appeal followed.

## II.

"Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) are analyzed under the same *de novo* standard as motions to dismiss pursuant to Rule 12(b)(6)." *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010). In reviewing the district court's decision, we must construe the complaint in the light most favorable to the non-moving party. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Likewise, we also review *de novo* a district court's summary judgment decision. *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995). We "must affirm the district court only if we determine that the pleadings, affidavits, and other submissions show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)). "A district court's interpretation of state law is also governed by the *de novo* standard on appeal." *Am. Home Assurance Co. v. Hughes*, 310 F.3d 947, 949 (6th Cir. 2002) (citing *Ferro Corp. v. Garrison Indus., Inc.,* 142 F.3d 926, 931 (6th Cir. 1998)).

"In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). If a state's supreme court has yet to address the issue a particular case presents, we anticipate how the relevant state's highest court would rule by looking at all available data. *Id.*; *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Unless it is shown that the state's supreme court would decide differently, we view its intermediate court's decisions as persuasive. *Allstate Ins. Co.*, 249 F.3d at 454.

III.

On appeal, Mid-Century argues that the district court improperly compelled it to participate in Michigan's statutory appraisal process. It contends that since it has never admitted that the damage endured by Buildings C and D was caused by the windstorm, the district court should have held a hearing to decide if the damage to Buildings C and D was covered under D Boys' insurance policy before compelling Mid-Century to participate in Michigan's statutory appraisal process.

Michigan's statutory appraisal process is set forth in Mich. Comp. Laws § 500.2833(1)(m), which provides as follows:

> That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the

2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer.

In granting D Boys' motion for partial judgment on the pleadings, the district court relied on one Michigan appellate case, Michigan Department of Labor and Economic Growth Office of Financial and Insurance Services Bulletin (Bulletin), 2006-07-INS, and two district court opinions interpreting Michigan law. However, neither the Michigan appellate case, nor the Bulletin addressed the issue this case presents.

In *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 467-68 (Mich. Ct. App. 1991), the roof of the defendant's mobile home collapsed over the living room because of heavy rain. After the appraisal process provided in the insurance policy failed to resolve the matter, Auto-Owners brought a declaratory judgment action requesting the court to resubmit the case for appraisal after a clarification of its liability. *Id.* Following a hearing, the court ordered Auto-Owners to pay the appraisal amount. *Id.* Auto-Owners appealed, claiming that the appraisal was not properly premised on the policy's coverage. *Id.* Auto-Owners submitted payment to the defendant for replacement of the portion of the new roof covering the living room. *Id.* The defendant disagreed with Auto-Owners' assessment of the damages and submitted three separate appraisals, all valued at an amount that would cover replacing the entire roof, not just the portion covering the living room. *Id.*

When the defendant did not accept Auto-Owners' payment, Auto-Owners asked for an appraisal in accordance with Michigan's statutory appraisal process. *Id.* On appeal, Auto-Owners argued that the defendant's appraisers failed to consider the policy's exclusions. *Id.* at 469. The *Kwaiser* court concluded that the trial court erred in granting summary disposition to the defendant without first determining the extent of coverage and remanded the case for a determination of Auto-Owners' liability. *Id.* at 470. Importantly, the *Kwaiser* court stated that "matters of an insurance policy's coverage are generally for a court and not for appraisers," and that "[t]he appraisal process cannot legally settle coverage issues." *Id.*

In accord with *Kwaiser*, the Bulletin reads, in relevant part,

Once an insurer determines that a loss is covered under the subject policy of insurance, and there is a demand for appraisal by the policyholder or insurer, disagreements between policyholders and insurers over factual issues of whether some of the damages claimed by the policyholder are part of the amount of loss caused by the coverage event are part of the appraisal process. These issues do not constitute a "coverage question" for the Courts, and are manifestly included with the mandatory legislative requirements that disputes over the "amount of the loss" be subject to appraisal.

Bulletin, 2006-07-INS.

Both district court cases relied upon by the district court in this case dealt with scenarios in which the insurance company admitted liability under the policy with respect to one piece of property (e.g. an entire house), but the insurance companies attempted to withdraw from the appraisal process because they alleged that the plaintiffs' appraisers included damages in their appraisal that was not covered under their respective policy. *See Smith v. State Farm Fire & Cas. Co.*, 737 F. Supp. 2d 702, 705 (E.D. Mich. 2010); *Olivet Coll. v. Indiana Ins. Co.*, No. 98–cv–821 (W.D. Mich. Sept. 2, 1999). In both cases, the courts reasoned that since the insurance companies admitted liability for at least part of the damage to the property, the cases were properly ordered for appraisal.

The previously discussed authorities all stand for the proposition that once an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of the loss. *See* Mich. Comp. Laws § 500.2833(1)(m). However, the cases all make clear that if liability is not admitted by an insurer, the trial court must first determine the issue of "coverage" before ordering appraisal.

We respectfully disagree with the district court, and find that none of the previously cited authorities dealt with the issue presented in this case, nor has any other Michigan case. Unlike the cases relied upon by the district court, which involved a single claim expanded to include additional damage to the same structure, the present case involves two separately filed claims involving damage to physically distinct structures. Since there is no mandatory or persuasive authority directly on point we must "anticipate how the [Michigan Supreme Court] court would rule by looking at all available data." *Allstate Ins. Co.,* 249 F.3d at 454.

In this case, Mid-Century admitted in its Answer that the damage suffered to Building J was caused by the windstorm. (Page ID # 16-17.) However, it never made such a legal admission with regard to Buildings C and D. As emphasized in the authority discussed above, Mich. Comp. Laws § 500.2833(1)(m)'s purpose is to resolve the "amount of the loss" in insurance disputes when liability has already been admitted. *See Kwaiser*, 476 N.W.2d at 470 ("The appraisal process cannot legally settle coverage issues."). While we agree that the damage to Building J presented an "amount of the loss" issue, as liability was undisputed, we hold that Buildings C and D present coverage issues outside the purview of Mich. Comp. Laws § 500.2833(1)(m). Therefore, the district court should have held a hearing to determine whether the damage to Buildings C and D was covered under the policy prior to ordering the parties to

participate in Michigan's statutory appraisal process. Our holding is harmonious with Michigan's precedent, as it ensures that an insurer's ability to contest liability is not circumvented by the statutory appraisal process and also prevents appraisers from effectively determining coverage issues.

Since the district court did not specify what damages were attributable to each particular apartment building, we must remand the entire case. Additionally, our holding also reverses the district court's award of penalty interest. The interest award was premised on the district court's summary judgment ruling upholding the appraisal award. Therefore, we need not address it further.

IV.

For the reasons detailed above, we **REVERSE** and **REMAND** the case to the district court for proceedings consistent with this opinion.