*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CANTINA ENTERPRISES II INC., doing business as MIGUEL'S CANTINA,

        Plaintiff-Appellee,

v

PROPERTY-OWNERS INSURANCE COMPANY,

        Defendant-Appellant.

FOR PUBLICATION
January 18, 2024
9:10 a.m.

No. 363105
Oakland Circuit Court
LC No. 2022-192082-CB

Before: CAVANAGH, P.J., and RICK and PATEL, JJ.

RICK, J.

Defendant appeals as of right an order of the trial court granting summary disposition to plaintiff under MCR 2.116(C)(10) (no genuine dispute of material fact), compelling appraisal of plaintiff's insurance claim under MCL 500.2833(1)(m), and appointing an umpire. Defendant also challenges an earlier order denying a separate motion for summary disposition. We affirm.

## I. FACTUAL BACKGROUND

This case arises from an insurance dispute over the damages sustained as a result of a fire. The fire started in the kitchen area of plaintiff's restaurant in July 2021. Plaintiff had a fire insurance policy through defendant that covered the restaurant. The policy insured plaintiff's interest in any "Business Personal Property," which included "[plaintiff's] use interest as a tenant in improvements and betterments." The policy defined improvements and betterments as "fixtures, alterations, installations or additions: (a) [m]ade a part of the building or structure you occupy but do not own; and (b) [y]ou acquired or made at your expense but cannot legally remove[.]"

Plaintiff's duties, if loss or damage occurred, were detailed in the policy's Building and Personal Property Coverage Form. If a covered event occurred, plaintiff was required to promptly notify defendant of the damages, include a description of the property involved, and of how, when, and where the damage occurred. Defendant would then direct plaintiff on how to submit a signed, sworn proof of loss statement containing the information necessary for defendant to investigate

plaintiff's claim. The proof of loss form and requested information were to be returned within 60 days after defendant sent plaintiff the necessary paperwork.

Defendant's directions provided guidance for determining what materials constituted satisfactory proof of loss, and required plaintiff to prepare an inventory describing the damaged property in full. The inventory was to "show in detail quantities, date of purchase, place of purchase, purchase price, replacement cost and actual cash value at the time of loss or repair cost." Plaintiff was required to attach copies of bills, receipts, and any other documents supporting the submitted inventory. If plaintiff and defendant failed to agree on the value of the property or the amount of loss, the policy permitted either party to make a written demand for appraisal. This appraisal provision matched language in MCL 500.2833(1)(m), which specifies the provisions required in fire insurance policies in Michigan. MCL 500.2833 *et seq*.

Plaintiff submitted the building and fire department reports to defendant on July 12, 2021. There was no dispute that the fire was a covered event under the policy, so plaintiff began submitting estimates of every item needing repair and a dollar amount each item was expected to cost. In August 2021, defendant began paying on the claim, including $30,000 for plaintiff's improvements and betterments to the leasehold space.

Plaintiff was working with defendant's adjuster to prove its losses when a dispute arose about certain claimed betterments in the restaurant's kitchen. Defendant explained there were numerous items in the estimate that were considered "building items," which were not covered under plaintiff's policy. Defendant informed plaintiff that the policy might cover these items as betterments or improvements if documentation could show that plaintiff, and not plaintiff's landlord, installed the items to the building. On August 18, 2021, plaintiff provided defendant with proof of various renovations plaintiff made to the restaurant in 2009, 2016, 2018, and 2019, which defendant said it would include in its estimate of losses plaintiff sustained.

On September 17, 2021, defendant informed plaintiff about items that did not qualify as improvements or betterments recoverable by plaintiff because they were "building items." Plaintiff again attempted to provide proof that the items had not been installed by the landlord. However, defendant rejected plaintiff's proof of loss because the proofs did not adequately support the claim that plaintiff paid for the items before the fire. Defendant stated that the investigation of plaintiff's claim was complete, but plaintiff could still provide additional information to support the items claimed as improvements and betterments.

On October 1, 2021, defendant was notified that plaintiff was demanding immediate appraisal of the claim in accordance with plaintiff's insurance policy and MCL 500.2833(1)(m), and that plaintiff had selected its appraiser. Defendant responded that the demand was premature because plaintiff still had not provided defendant with a signed, sworn proof of loss statement. Defendant directed plaintiff to submit the proof of loss statement and further supporting documents for consideration before November 12, 2021, so that defendant could properly evaluate whether there was an appraisable dispute. It noted that coverage issues were not appraisable. Plaintiff sent a signed, sworn proof of loss statement and quotes for improvements and betterments to defendant on October 27, 2021, claiming a total replacement cost of $44,254.17 in "Business Personal Property."

Defendant rejected the amount claimed because the documentation allegedly did not support the $44,254.17 amount asserted by plaintiff. Defendant again reiterated that any amounts claimed for the building items were not covered under the policy. In a final letter dated December 9, 2021, defendant asked plaintiff to submit paid invoices for improvements and betterments from before the fire to support plaintiff's claims for "Business Personal Property" before January 24, 2022.

Plaintiff did not respond, and instead filed a complaint to compel appraisal under MCL 500.2833(1)(m). In lieu of an answer, defendant moved for summary disposition under MCR 2.116(C)(7) (claim barred by operation of law), (C)(8) (failure to state a claim), and (C)(10) (no genuine issue of material fact). The trial court denied the motion, finding that a question of fact existed as to whether plaintiff complied with the requirement to submit a sworn proof of loss statement containing the required information within 60 days of plaintiff's request for coverage.

Plaintiff filed a response and countermotion for summary disposition under MCR 2.116(I)(2) (nonmoving party entitled to summary disposition). In the same motion, plaintiff requested the trial court compel appraisal under MCL 500.2833(1)(m), MCR 3.602(B) and MCL 691.1687(1)(b), and appoint an umpire. Plaintiff contended that defendant's provision of some coverage for items lost or damaged in the fire entitled plaintiff to demand appraisal under MCL 500.2833(1)(m). Plaintiff further maintained that defendant's objections to the statement that plaintiff provided to support its proof of loss was designed to cause delay. Plaintiff also argued that contrary to defendant's argument, the parties only disagreed on the extent of coverage, not whether coverage existed at all. According to plaintiff, this indicated appraisal was the necessary next step. Defendant responded, arguing that the repair estimate that plaintiff submitted was insufficient to estimate defendant's liabilities, and precluded defendant from determining whether coverage for the claim existed under the policy. According to defendant, the appraisal process could not replace the need for a judicial resolution of a dispute over whether the claimed items were covered under the policy.

In a final order closing the case, the trial court entered judgment in favor of plaintiff. Although plaintiff moved for summary disposition under MCR 2.116(I)(2), the court ultimately granted summary disposition under MCR 2.116(C)(10). It further ordered that plaintiff was entitled to appraisal under MCL 500.2833(1)(m) and the terms of the policy, and appointed an umpire. The trial court noted that defendant failed to show that plaintiff provided insufficient proof of loss. As such, the trial court found that the dispute was a factual dispute over the amount of loss, and not a legal dispute over coverage, as defendant argued. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred by granting summary disposition to plaintiff. Defendant contends that the court erroneously concluded that this dispute should be resolved by the appraisal process under MCL 500.2833(1)(m). We disagree.

We review de novo the trial court's decision to grant or deny summary disposition. *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020). A motion for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a plaintiff's claim, is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment

-3-

as a matter of law. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might disagree." *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018) (quotation marks and citation omitted). When reviewing the trial court's decision to grant or deny summary disposition under MCR 2.116(C)(10), this Court considers the parties' documentary evidence in the light most favorable to the party opposing the motion. *Johnson*, 502 Mich at 761. "[R]eview is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care*, *Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

"To the extent that resolution of this issue involves statutory interpretation, we review de novo whether the circuit court properly interpreted and applied the relevant statutes." *Wiesner v Washtenaw County Community Mental Health*, 340 Mich App 572, 580; 986 NW2d 629 (2022) (citations omitted). "The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent." *Id*. Similarly, "[t]his Court reviews de novo the interpretation and application of an insurance policy." *Gavrilides Mgmt Co, LLC v Mich Ins Co*, 340 Mich App 306, 315; 985 NW2d 919 (2022).

Defendant first argues that plaintiff's claim for recovery is barred because plaintiff failed to submit its sworn proof of loss within 60 days from the date of the loss. Defendant correctly points out that in general, an insured is precluded from filing a claim under the applicable insurance policy if it fails to submit a proof of loss within 60 days from the date of the loss, absent waiver of the 60-day requirement by the insurance carrier. *Auto-Owners Ins Co v Gallu*p, 191 Mich App 181, 183-184; 477 NW2d 463 (1991). "Waiver is defined as the intentional and voluntary relinquishment of a known right." *Moore v First Security Cas Co*, 224 Mich App 370, 376; 568 NW2d 841 (1997) (citations omitted). A waiver may be "evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019) (citations omitted).

On this record, we conclude that defendant waived any defense barring plaintiff's claim for failure to submit a proof of loss within 60 days. The loss at issue here occurred in July 2021. Although plaintiff did not formally submit the proof of loss at issue in this case until October 27, 2021, defendant advanced partial payments on the claim in August 2021, impliedly waiving the 60-day requirement. By our calculations, the initial deadline to submit a proof of loss was September 7, 2021.[1] However, defendant extended the deadline for submission twice: first on September 17, 2021, when defendant informed plaintiff that its investigation of the claim was complete, and for a second time on October 13, 2021, when defendant told plaintiff to submit the additional proof of loss by November 12, 2021. By communicating that it would continue to accept the statement of loss past the deadline in the contract, defendant *expressly* waived the 60-day requirement.

---

[1] The policy required plaintiff to submit a sworn proof of loss within 60 days after defendant's request to investigate the claim. Defendant sent its request to investigate the claim on July 9, 2021, meaning the deadline to submit the proof of loss would have been September 7, 2021.

Turning to the substance of defendant's appeal, we note that "[w]hile matters of coverage under an insurance agreement are generally determined by the courts, the method of determining the loss is a matter reserved for the appraisers." *Dupree v Auto-Owners Ins Co*, 497 Mich 1, 4-5; 857 NW2d 247 (2014). Although the parties characterize this dispute differently, there is no disagreement regarding the definition of the term "Business Personal Property" in the policy. The policy specifies that the following items constitute Business Personal Property:

> b. Your Business Personal Property located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property - Separation Of Coverage endorsement:
>
> (1) Furniture and fixtures;
>
> (2) Machinery and equipment;
>
> (3) "Stock";
>
> (4) All other personal property owned by you and used in your business;
>
> (5) Labor, materials or services furnished or arranged by you on personal property of others;
>
> (6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:
>
> (a) Made a part of the building or structure you occupy but do not own; and
>
> (b) You acquired or made at your expense but cannot legally remove; and
>
> (7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

The parties instead dispute whether particular items fall within "Business Personal Property," and whether that dispute constitutes a genuine coverage issue reserved for the trial court, or an amount-of-loss issue that should be decided by an appraiser.

Michigan's statutory appraisal process, on which the appraisal provisions of the policy are based, is set forth in MCL 500.2833(1)(m). The statute states that every contract for fire insurance in Michigan must include a provision indicating:

> (m) That if the insured and insurer *fail to agree on the actual cash value or amount of the loss*, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire. If the 2 appraisers are unable to agree upon an umpire within 15 days, the insured or insurer

may ask a judge of the circuit court for the county in which the loss occurred or in which the property is located to select an umpire. The appraisers shall then set the amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by the insured and the insurer. [MCL 500.2833(1)(m) (emphasis added).]

This process has been characterized as "a 'substitute for judicial determination of a dispute concerning the amount of a loss,'" and "'a simple and inexpensive method for the prompt adjustment and settlement of claims.' *Auto-Owners Ins Co v Kwaiser*, 190 Mich App 482, 486; 476 NW2d 467 (1991), quoting *Thermo-Plastics R & D, Inc v Gen Accident Fire & Life Assurance Corp, Ltd,* 42 Mich App 418, 422; 202 NW2d 703 (1972). Its purpose is to resolve the amount of loss in insurance disputes where liability has been admitted. *Kwaiser*, 190 Mich App at 487.

"[W]here the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Id*. "Once an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of loss." *The D Boys, LLC v Mid-Century Ins Co*, 644 Fed Appx 574, 578 (CA 6, 2016). "However, if liability is not admitted by an insurer, the trial court must first determine the issue of 'coverage' before ordering appraisal." *Id*.

Disputes over coverage versus scope-of-loss came to the attention of the Michigan Department of Labor and Economic Growth Office of Financial and Insurance Services (OFIS) in 2006. At that time, the OFIS issued Bulletin No. 2006-07-INS, which states:

The Office of Financial and Insurance Services has learned that some property and casualty insurance companies wrongfully refuse to submit disputes regarding the amount of the loss to appraisal, as mandated by MCL 500.2833(1)(m). Such insurers take the position that, in claims involving repair or replacement cost policies, disagreements concerning the extent of the damages from the covered loss, the "scope of the repair or replacements" made necessary by the covered loss, are "coverage issues" and not subject to appraisal. Indeed, some insurance companies have refused to participate in appraisal unless the policyholder agrees in advance of appraisal to the scope of repairs calculated by the insurance company.

Such conduct is contrary to MCL 500.2833(1)(m), and is also prohibited by the Uniform Trade Practices Act (MCL 500.2001 *et seq*.), including MCL 500.2026(1)(a), (b) and (f). *Once an insurer determines that a loss is covered under the subject policy of insurance, and there is a demand for appraisal by the policyholder or insurer, disagreements between policyholders and insurers over factual issues of whether some of the damages claimed by the policyholder are part*

*of the amount of loss caused by the coverage event are part of the appraisal process.* These issues do not constitute a "coverage question" for the Courts, and are manifestly included with the mandatory legislative requirements that disputes over the "amount of the loss" be subject to appraisal.

It is expected that insurance companies will not delay or refuse appraisal and will promptly and properly submit disputes concerning amounts of loss to appraisal. The Commissioner may commence administrative action proceedings against the certificate of authority of an insurance company that fails to comply with the statutory appraisal requirements as cited above. [OFIS Bulletin No. 2006-07-INS (2006 WL 2772464 (MI INS BUL)). (Emphasis added).]

Bulletin No. 2006-07-INS was rescinded on June 20, 2017 (MI Memorandum No. 6-20-2017 (MI INS BUL), 2017 WL 2693834, p 1). But concerns later arose regarding the effect of the rescission, and insurers again began refusing to submit to appraisal even when coverage was not in dispute (MI Memorandum No. 12-20-2017 (MI INS BUL), 2017 WL 6599000, p 1).

On December 20, 2017, OFIS issued a new memorandum superseding the rescission of Bulletin 2006-07-INS, to clarify its intent in rescinding the Bulletin. *Id*. In the memorandum, OFIS explained:

There appears to be uncertainty among some insurers and policyholders as to the proper forum for claim resolution in circumstances where an insurer acknowledges that there is liability under the policy for some damages claimed by a policyholder, but there is disagreement concerning the amount of loss because the insurer believes that some of the damages claimed by the policyholder are not covered by the policy of insurance.

Under these circumstances, Michigan courts have held:

Under Michigan law, the court is to determine what is covered and what is not covered under the policy, and the appraisers then determine whether a particular item meets the definition provided by the Court. As the Michigan Court of Appeals explained, the appraisers are to decide 'what particular articles or items of property are embraced within the general description of the property they are to appraise for damages. The Court in *Kwaiser* further noted that *the determination by appraisers of whether a particular item falls within the general description of the property they are to appraise "reflects the method of determining the loss rather than a matter of coverage*."

*Smith v State Farm*, 737 F Supp 2d 702 at 710 (ED Mich 2010) (internal citation omitted).

In rescinding Bulletin 2006-07-INS, the Director was not opining that insurers may refuse to submit to appraisal when liability under the insurance policy is not in dispute. On the contrary, the Director continues to consider participation in the appraisal process under Section 2833(1)(m) to be mandatory in those situations.

This Memorandum, therefore, serves as clarification that, when coverage is not in dispute, the issue of "actual cash value or amount of the loss" can be determined via the appraisal process as described in Section 2833(1)(m). Further, when a party demands an appraisal in accordance with Section 2833(1)(m), an insurer's participation in the appraisal process is mandatory. [MI Memorandum No. 12-20-2019 (MI INS BUL), 2017 WL 6599000, p 1. Emphasis added.]

Administrative bulletins are recognized as advisory and "do[] not have the force or effect of law[.]" MCL 24.203(7). However, they have been regarded as instructive in deciding coverage versus amount-of-loss disputes. For example, in *Smith v State Farm Fire & Cas Co*, 737 F Supp 2d 702, 706 (ED Mich, 2010),[2] a fire damaged the insured's home, and later led to the discovery of unrelated and preexisting contamination specifically excluded by the policy. Much like the current matter, the parties in *Smith* did not disagree about the interpretation of the policy, but *did* dispute which losses relating to the fire were covered. *Id*. at 706-709. They debated whether this constituted a coverage issue or a scope-of-loss issue. *Id*. The court held that there was no genuine coverage dispute, and that the dispute instead concerned a scope-of-loss issue regarding claims that the insurer had admitted were covered under the policy. *Id*. at 711. The court decided that the appraisal process was most appropriate for solving the scope-of-loss issue, and accused the insurer of "manufactur[ing] a 'coverage' dispute." *Id*. at 711-712. The district court found this was precisely the situation OFIS Bulletin 2006-07-INS intended to address and clarify. *Id*. at 712.

Summarizing the holdings of *Smith* and similar unpublished authorities, the Sixth Circuit in *The D Boys, LLC*, 644 Fed Appx at 578, explained:

[These] authorities all stand for the proposition that once an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process, as the parties do not dispute liability and only are at odds about the amount of the loss. See [MCL] 500.2833(1)(m). However, the cases all make clear that if liability *is not admitted by an insurer*, the trial court must first determine the issue of "coverage" before ordering appraisal. [Emphasis added.]

The Sixth Circuit also cited *Kwaiser* for the proposition that, "in Michigan appraisers resolve (at least in the first instance) any factual disputes about the amount of an insured's loss." *Scottsdale Ins Co v Altman Mgmt Co*, 832 Fed Appx 998, 999 (CA 6, 2021).

We are persuaded that that *Smith* and *The D Boys, LLC* are directly on point. Defendant admitted that the damages at issue here are generally covered by plaintiff's insurance policy; thus, this is not a *coverage* dispute. Instead, the dispute concerns the *scope* of plaintiff's loss, and whether plaintiff is entitled to reimbursement for every item it has identified as eligible under the policy's terms. In other words, this is merely a factual dispute about whether plaintiff has proved the loss, and only changes plaintiff's damages award. As stated by our Supreme Court in *Dupree*,

---

[2] We recognize that decisions from lower federal courts are not binding on this Court, but note that they may be considered for their persuasive value. *Abela v General Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

497 Mich at 4-5, as well as the federal courts in *Smith*, 737 F Supp 2d at 711-72, and *The D Boys, LLC*, 644 Fed Appx at 578, the determination here is best reserved for an appraiser.  Additionally, our holding is consistent with *Kwaiser*, 190 Mich App at 487.  Defendant admitted that the fire is covered under the policy by making payments on the claim, and plaintiff made a demand for appraisal once the parties reached an impasse about the amount of money owed to plaintiff for the loss.  An appraiser should thus be the arbiter for disagreements about what damages and their value are included in "Business Personal Property," on the basis of the proof of loss plaintiff provided. *Id*.  Accordingly, we conclude that the trial court properly granted summary disposition in favor of plaintiff.  Plaintiff is entitled to the appraisal of its insurance claim.

       Affirmed.

/s/ Michelle M. Rick
/s/ Mark J. Cavanagh
/s/ Sima G. Patel